**DUANE MANAGEMENT COMPANY, Plaintiff–Appellant,**

v.

**PRUDENTIAL INSURANCE COMPANY, Defendant–Appellee.**

**No. 93–5624.**

United States Court of Appeals, Sixth Circuit.

Argued April 22, 1994.

Decided July 1, 1994.

Peter L. Ostermiller (argued), Robert G. Stallings (briefed), Stallings & Stallings, Louisville, KY, for plaintiff-appellant.

Samuel G. Bridge, Jr. (argued and briefed), Wyatt, Tarrant & Combs, Richard W. Iler, E. Scott Fruehwald, Wyatt, Tarrant & Combs, Louisville, KY, for Prudential Ins. Co. of America.

Before: MERRITT, Chief Judge; KENNEDY and NELSON, Circuit Judges.

MERRITT, Chief Judge, delivered the opinion of the court, in which NELSON, Circuit Judge, joined. KENNEDY, Circuit Judge (pp. 249–250, delivered a separate opinion concurring in part and dissenting in part.

MERRITT, Chief Judge.

In this diversity case, Plaintiff Duane Management Company, a real estate leasing agent, appeals the district court's order granting summary judgment in favor of defendant Prudential Insurance Company, the owner of commercial rental property. Duane and Prudential had entered into an agency contract in which Duane would act as Prudential's leasing agent. Prudential subsequently sold the property and terminated the contract as it was entitled to do under the contract's terms. Duane contends on appeal that the language of the contract accords Duane the right to certain future real estate leasing commissions from Prudential. The main issue under the leasing agreement is whether the exercise by a tenant of a right to renew or continue a lease after the sale of the property obligates Prudential to pay commissions to Duane under a provision which says that it must not violate "any right which has accrued ... prior to the date when such termination shall become effective." We agree with the district court that the contract does not provide Duane the right to the commissions and therefore affirm.

### I.

Prudential owned three warehouse properties located in Jefferson County, Kentucky. In May of 1987, Prudential and Duane entered into an Executive Leasing Agreement, the contract now at issue. The contract made Duane the leasing manager of the properties with duties to investigate and develop lease space, solicit new tenants, solicit renewals from tenants, submit monthly activity reports, etc. As compensation for Duane's work as leasing manager, the con-

tract provided for leasing commissions to be paid to Duane at certain times during the tenants' leases.

The leases on the properties provided the tenant with the option to cancel the lease prior to its expiration during specific periods during the lease. Under the contract between Duane and Prudential, Duane's initial commission upon the tenant's signing of the lease was dependant on the uncancellable portion of the lease. In addition, Duane would be entitled to collect an additional noncancellation if the tenant chose not to cancel. Duane would also earn an additional or renewal commission if the tenant chose to renew the lease at the end of the lease term.

On November 17, 1988, approximately 18 months after Duane began as Prudential's leasing manager, Prudential sold the properties. Duane subsequently requested that the Prudential pay noncancellation and renewal commissions that would arise after the sale. Neither Prudential nor the purchaser paid those commissions to Duane and approximately two years after the sale, Duane filed this suit seeking the commissions.[1]

After extensive discovery, motions for summary judgment were filed which the district court referred to a Magistrate. The Magistrate issued a Report and Recommendation, recommending summary judgment in favor of Prudential against Duane. The Magistrate found the language of the leasing agreement "plain and unambiguous," revealing no right of Duane to the noncancellation and renewal commissions. The district court adopted the Magistrate's Report and granted summary judgment in favor of Prudential. Duane now appeals.

## II.

The provisions of the contract at issue provide the following:

**1.3** *Termination upon sale* .... [T]his Agreement shall terminate automatically and immediately, as to any specific Property, upon sale thereof by Owner and upon

termination of Owner's right to collect the rents therefrom.

**5.5** *Except in the case of termination upon sale as provided in Section 1.3,* ... Owner shall pay Leasing manager an appropriate commission under Article 7 with respect to any lease executed and delivered after the effective termination date, provided that Leasing manager was involved in pending and active negotiations with said tenant ... at the time of termination....

**5.7** Except as otherwise provided herein to the contrary, termination of this Agreement shall not affect or impair any right which has *accrued* to either party hereto prior to the date when such termination shall become effective.

(J.A. at 19–31) (emphasis added). "Exhibit E" of the agreement governs the amount and schedule of payment for non-cancellation and renewal leasing commissions:

**I.A.(4)** If a lease provides that a tenant alone or both landlord and tenant have the right to cancel the lease or any portion thereof prior to the expiration of the original term, then a leasing commission shall be payable only on the uncancellable portion of the term.... If the tenant elects not to cancel the lease, then an additional commission, for the remainder of the original term, shall be paid to Leasing Manager at the time the right of cancellation has expired.

**II.A.(2)** Leasing Manager shall be entitled to the commission upon the commencement of the extended or renewal term.

(J.A. at 38–40) (emphasis added).

On appeal, plaintiff argues that under § 5.7, plaintiff's right to the noncancellation and renewal commissions had "accrued" at the time the initial leases were signed and that only payment was deferred. Because the "right" actually "accrued" prior to the termination of the agreement, plaintiff concludes it is entitled to the commissions. Duane also says that the renewal and continuation provisions in the leases express the possibility and perhaps create an expectation

---

**1.** Plaintiff initially sued defendant in Jefferson County Circuit Court for these commissions. Cushman & Wakefield of Kentucky, Inc., the former leasing agent under a different contractual agreement, intervened to assert claims against Prudential for commissions. Prudential impleaded Weston, Inc., the purchaser of the property, as a third party defendant.

of a continuing relationship between the tenant and the leased premises and that this expectation enhanced the value of the property when it was sold. Duane argues that even though there is no assurance that the leases will be renewed, its work procuring the leases added to the value of the properties and that it is only fair that Duane should receive a commission if this expectation of renewal is realized in the future.

Prudential responds that under § 1.3, the contract terminated upon the sale of the property and Prudential would no longer receive future rental payments or the benefit of renewals and no longer had an obligation to pay commissions under the agreement unless the agreement specifically provided for post-termination commissions. Defendant contends that the only section which provides for post-termination payment is § 5.5, but that section does not apply in this case because the termination of the contract was "upon sale."

Defendant also argues that it had no obligation under § 5.7 to pay noncancellation or renewal commissions to plaintiff which arose after termination of the agreement because those rights had not "accrued" prior to the termination. Defendant contends that the noncancellation and renewal commissions were completely contingent on a future event, namely the tenant's choice regarding cancellation or renewal, at the time the contract terminated. Only when the tenant elected not to cancel or elected to renew would plaintiff's right to those commissions accrue. Because those events occurred post-termination, the rights had not "accrued ... prior to the date when such termination ... [became] effective."

Our review of a district court's grant of summary judgment is *de novo*. Our review of the record suggests no genuine issue of material fact. We have before us simply an issue of contract interpretation.

■ Section 1.3 of the contract clearly states that the contract terminates "immediately" upon the sale of the property. Thus, any obligation of the defendant in this case to pay noncancellation or renewal commissions

terminated upon the sale of the properties unless the contract expressly provided for such payment post-termination. Section 5.5 addresses post-termination commissions for leases executed and delivered after the termination date, but expressly provides that the section does not apply "in the case of termination upon sale."

■ The only other section of the contract that provides for post-termination rights is § 5.7, which states that "termination of this Agreement shall not affect or impair any right *which has accrued to either party hereto prior to the date when such termination shall become effective.*" (emphasis added). Consequently, the question before us is whether the plaintiff's rights to the noncancellation or the renewal commissions at issue had "accrued" prior to the date that defendant sold the property. We agree with the district court that those rights had not accrued.

A right has accrued when it is vested; i.e., when there arises a fixed, unconditional right to receive it:

> The word "accrued" does not signify that an item is due in the sense of being payable; the accrual system disregards the dates of payment, making the right to receive and not actual receipt decisive.
>
> The basic consideration in determining whether or not [a right] has accrued depends upon whether or not all of the events creating the liability have occurred....

*Archer v. Comm'r of Revenue of Kentucky*, 312 Ky. 454, 227 S.W.2d 1001, 1002 (Ct.App. 1950) (quotation omitted).

In this case, plaintiff did not have an unconditional right to receive the non-cancellation or renewal commissions at the time of the termination of the contract. Plaintiff's right to receive those commissions hinged completely on decisions of the tenants which could not be known at the time of the sale. Section I.A.(4) of Exhibit E, the section which dictated the terms of non-cancellation commissions, stated that *if* the tenant elected not to cancel, "then an additional commission ... shall be paid to Leasing Manager at the time the right of cancellation has expired." At the time of the termination of the contract, no decision by the tenant had been made regarding cancellation. Thus, the

right to receive an additional non-cancellation commission was not unconditional and therefore had not "accrued." A "right accrued" does not normally mean a mere possibility, a hope for future profit or an uncertain value based on inertia or on the habit of businesses to continue to stay at the same place when they have no obligation to do so.

■ Similarly, Section II.A.(2) of Exhibit E, the section which dictated the terms of renewal commissions, stated that plaintiff "shall be entitled to the commission upon the commencement of the extended or renewal term." The renewal term had not commenced at the time of the termination of the contract between plaintiff and defendant. Plaintiff's right to receive the renewal commissions was contingent on the tenant's future decision to renew and therefore had not accrued.

The fact that the leases may have some "good will" value based on the expectation of future renewals does not alter our construction of the contract. If there were clear language in the contract, or even ambiguous language in the contract, that should be construed to give the leasing agent a portion of the value added upon a sale of the property, the question would be different. Duane seeks to have us interpret a different contract than the one the parties entered and to increase its entitlement on termination. To give such an interpretation to the contract would be to rewrite it, and this we decline to do.

In sum, we agree with the district court that the leasing agreement between the parties did not accord plaintiff the right to non-cancellation and renewal commissions because plaintiff's right to those commissions had not accrued when the contract was terminated.

Accordingly, the judgment of the district court is **AFFIRMED.**

KENNEDY, Circuit Judge, dissenting in part and concurring in part.

Because I am of the opinion that plaintiff's right to noncancellation commissions on the leases in effect when the property was sold had accrued, I respectfully dissent. The leasing agreement provided:

7.1   With respect to new leases . . ., Owner shall pay Leasing Manager the leasing commissions set forth in Section I of Exhibit E hereto.

Section A(1) of Exhibit E provides:

With respect to each such new lease . . ., Owner shall pay Leasing Manager a commission of five percent (5%) of the commission base, hereafter defined in Section III below.

Section A(4) of Exhibit E provides:

If a lease provides that a tenant alone or both landlord and tenant have the right to cancel the lease or any portion thereof prior to the expiration of the original term, then a leasing commission shall be payable only on the uncancellable portion of the term. If the lease provides for a penalty to be paid by the tenant upon cancellation of the lease, then a commission shall be paid to Leasing Manager on the amount of the penalty which does not represent Owner's recovery for tenant finish costs, and only when the penalty is actually paid by the tenant. If the tenant elects not to cancel the lease, then an additional commission, for the remainder of the original terms, shall be paid to Leasing Manager at the time the right of cancellation has expired. If the landlord has the sole right of cancellation, a commission for the entire term shall be paid to Leasing Manager.

Plaintiff was paid its commission for the noncancellable portion of the leases at the time they were executed or on the first anniversary date. It had fully performed all of its obligations under the agreement and was entitled to commissions on the balance of the leases unless the tenant elected to cancel. The agreement provided that the leasing commissions on the cancellable portion be paid at the time the right of cancellation expired. The fact that payment was deferred until that time does not change plaintiff's right to the commissions. As the majority acknowledges, a right accrues when all of the events creating the liability have occurred. *Archer v. Comm'r of Revenue of Kentucky*, 312 Ky. 454, 227 S.W.2d 1001, 1002 (Ct.App.1950). Defendant's liability ac-

crued when plaintiff secured the leases. That liability could be excused if the leases were cancelled. "The word 'accrued' does not signify that an item is due in the sense of being payable; the accrual system disregards dates of payment, making the right to receive and not actual receipt decisive." *Id.* (citing *Law of Federal Income Taxation,* Paul and Mertens, Vol. 1, § 11.69). With respect to the commissions on the existing leases, the events which make payment due have occurred. Although a condition subsequent could have cut off plaintiff's accrued rights, namely, the election of the tenant to cancel the lease, that condition subsequent has not occurred.[1]

The majority interprets this condition as a condition precedent to defer liability. Its interpretation is based on the following language of the agreement: "if the tenant elects not to cancel the lease." No act, however, is required of the tenant to fix defendant's liability. The tenant merely has a right to cancel, which it may or may not exercise. An affirmative act of the tenant is required to cancel and to cut off plaintiff's accrued rights. If the tenant is required to pay a penalty for exercising its right to cancel, plaintiff is, under Exhibit E, entitled to a commission on the amount of the penalty. That provision seems to me to indicate an accrued right to the commissions on the unexpired terms of the lease.

The current Restatement of the Law of Contracts treats conditions of this kind as excuses for nonperformance, which is what they really are. *See* Restatement (Second) of Contracts §§ 224–226 (1979). When, as here, the leases are not cancelled, performance is not excused. The fact that defendant's duty to perform is conditional does not mean plaintiff's right to performance is not accrued or vested. It merely means that plaintiff's right is limited to the conditional performance. There was no event here which was a condition of the contract to pay commissions coming into existence.

With respect to the renewal commissions, I would agree that they were contingent, *i.e.,* not vested or accrued at the time of sale.

Defendant's liability as to these commissions was not fixed unless the tenant renewed. Since Kentucky appears to adhere to the condition precedent/condition subsequent distinction, rather than the Restatement (Second) of Contracts condition analysis, I agree with the majority that plaintiff lost its right to renewal commissions at the time of sale.

---

1. In *Archer,* Archer was to receive an annual salary of $12,000 beginning August 1, 1942, the amount not to be credited until the last of the year. The court held that the salary accrued at the rate of $1,000 per month and $5,000 had accrued at the end of the 1942 year. The taxpayer was arguing that he should only be liable for salary earned on a quantum meruit basis.