**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

INTRACOMM, INCORPORATED; BABACK
HABIBI,
             *Plaintiffs-Appellants,*

v.

KEN S. BAJAJ; JACK PEARLSTEIN;
STEVEN L. HANAU; DIGITALNET
HOLDINGS, INCORPORATED; BAE
SYSTEMS NORTH AMERICA; BAE
SYSTEMS INFORMATION TECHNOLOGY,
LLC, formerly known as Digitalnet
Government Solutions, LLC; BAE
SYSTEMS IT HOLDINGS,
INCORPORATED, formerly known as
Digitalnet Holdings, Incorporated,
             *Defendants-Appellees,*

and

NATIONAL INSTITUTES OF HEALTH,
             *Party in Interest.*

No. 06-1516

UNITED STATES DEPARTMENT OF
LABOR,
             *Amicus Curiae.*

INTRACOMM, INCORPORATED; BABACK
HABIBI,
                    *Plaintiffs-Appellees,*

                    v.

BAE SYSTEMS INFORMATION
TECHNOLOGY, LLC, formerly known
as Digitalnet Government Solutions,
LLC,
                    *Defendant-Appellant,*

                    and

KEN S. BAJAJ; JACK PEARLSTEIN;
STEVEN L. HANAU; DIGITALNET
HOLDINGS, INCORPORATED; BAE
SYSTEMS NORTH AMERICA; BAE
SYSTEMS IT HOLDINGS,
INCORPORATED, formerly known as
Digitalnet Holdings, Incorporated,
                    *Defendants,*

                    and

NATIONAL INSTITUTES OF HEALTH,
                    *Party in Interest.*

No. 06-1539

UNITED STATES DEPARTMENT OF
LABOR,
                    *Amicus Curiae.*

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Senior District Judge.
(1:05-cv-00955)

Argued: March 13, 2007

Decided: July 5, 2007

Before SHEDD and DUNCAN, Circuit Judges, and
Samuel G. WILSON, United States District Judge for the
Western District of Virginia, sitting by designation.

---

Affirmed by published opinion. Judge Duncan wrote the opinion, in
which Judge Shedd and Judge Wilson concurred.

---

**COUNSEL**

**ARGUED:** Brad D. Weiss, CHARAPP & WEISS, L.L.P., McLean,
Virginia, for Appellants/Cross-Appellees. John Francis Scalia,
GREENBERG & TRAURIG, L.L.P., McLean, Virginia, for
Appellees/Cross-Appellant. **ON BRIEF:** Stephen F. Varholy,
CHARAPP & WEISS, L.L.P., McLean, Virginia, for
Appellants/Cross-Appellees. Kevin B. Bedell, GREENBERG &
TRAURIG, L.L.P., McLean, Virginia, for Appellees/Cross-Appellant.
Jonathan L. Snare, Acting Solicitor of Labor, Steven J. Mandel, Asso-
ciate Solicitor, Paul L. Frieden, Counsel for Appellate Litigation,
Joanna Hull, Attorney, UNITED STATES DEPARTMENT OF
LABOR, Office of the Solicitor, Washington, D.C., for the Secretary
of Labor, Amicus Curiae.

---

**OPINION**

DUNCAN, Circuit Judge:

IntraComm, Inc. and Baback Habibi (collectively, "Appellants")
appeal the district court's grant of summary judgment in favor of Ken
Bajaj, Jack Pearlstein, Steven Hanau, and corporate defendants Digi-
talNet Holdings, Inc., BAE Systems North America, BAE Systems
Information Technology, LLC, and BAE Systems IT Holdings, Inc.
(collectively, "Appellees") on Appellants' claims for, inter alia,
breach of contract and fraud. Appellees cross-appeal the district
court's partial grant of summary judgment in favor of Appellants on
Appellants' claim that Appellees failed to pay Appellant Habibi mini-

mum wage in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. The district court held that Habibi was not exempt from the FLSA's minimum-wage requirements under the FLSA's "combination exemption," 29 C.F.R. § 541.708 (2006), and therefore was owed minimum wage for approximately 300 hours he worked without direct compensation.

For the reasons that follow, we affirm both the district court's grant of summary judgment to Appellees on the state-law claims and its grant of summary judgment to Habibi on the FLSA claim.

I.

Habibi is one of the founders of IntraComm, Inc., an information technology company, and is the creator of a software integration system known as "IC-WEL." Appellee BAE Systems Information Technology, LLC ("BAE IT LLC"), formerly known as DigitalNet Government Solutions, LLC ("DigitalNet LLC"), is an information technology service provider. BAE IT LLC is a wholly-owned subsidiary of Appellee BAE Systems IT, Inc. ("BAE IT Inc."), formerly known as DigitalNet, Inc. BAE IT Inc. is a wholly-owned subsidiary of Appellee BAE Systems IT Holdings, Inc. ("BAE IT Holdings"), formerly known as DigitalNet Holdings, Inc. ("DigitalNet Holdings"). BAE IT Holdings is a wholly-owned subsidiary of Appellee BAE Systems, Inc. ("BAE").

Appellees Bajaj and Pearlstein held high-level positions within DigitalNet LLC and DigitalNet Holdings during periods relevant to this case. Appellee Hanau was president of DigitalNet LLC.

In spring 2004, Habibi suggested to Bajaj and Pearlstein that Habibi be allowed to use DigitalNet LLC's name to market IC-WEL, the software integration system he created. Thereafter, DigitalNet LLC and IntraComm entered into an agreement (the "Assignment Agreement") that provided that DigitalNet LLC would have the exclusive right to "sell, use and license" IC-WEL for a fifteen-month period and an option to buy IC-WEL for $1.5 million. J.A. 939-46, 973-74. Additionally, the Assignment Agreement provided for the employment of certain IntraComm employees—Habibi and three others—by DigitalNet LLC.

On the same date, DigitalNet LLC and Habibi entered into an employment agreement. This agreement provided the terms and conditions of Habibi's employment with DigitalNet LLC. Appellants were represented by IntraComm's outside legal counsel in negotiating the employment agreement and the Assignment Agreement.

In summer 2004, BAE began confidentially negotiating a purchase of the outstanding shares of DigitalNet Holdings. Neither IntraComm nor Habibi were advised of the BAE acquisition before entering into the Assignment Agreement and the employment agreement. The BAE acquisition was completed in October 2004, at which time the Digital-Net firms changed their names to reflect BAE's purchase. Bajaj and Pearlstein left newly-named BAE IT LLC, formerly DigitalNet LLC, after BAE's acquisition, while Hanau remained with the company.

During Habibi's employment with BAE IT LLC, he did not sell any IC-WEL licenses to BAE IT LLC's customers or potential customers. Therefore, Habibi did not receive any sales commissions and only received a $7.00 per hour salary, as contemplated in the employment agreement. Habibi, however, maintains that he was instructed not to report hours he worked in excess of forty hours per week and that the BAE IT LLC time-reporting system prohibited him from doing so. Additionally, Habibi claims he received no compensation for a period of two weeks in May 2004. Indeed, the parties have stipulated that Habibi was not paid for 300 hours he actually worked during his employment with BAE IT LLC. These contentions form the basis of Habibi's claim that he was not paid minimum wage, in violation of the FLSA.

In early 2005, Habibi demanded that BAE IT LLC exercise its option to buy IC-WEL for $1.5 million and threatened to discontinue his efforts at marketing IC-WEL unless BAE IT LLC agreed to do so. After negotiations with Habibi failed, BAE IT LLC informed Habibi that it would not exercise its option to buy IC-WEL. Habibi retained legal counsel and sent a demand letter to BAE IT LLC. The parties met but could not resolve the issues between them. BAE IT LLC decided to terminate Habibi's employment and did so just after Habibi filed this lawsuit against Appellees in state court in Fairfax County, Virginia.

In the lawsuit, Appellants alleged failure to pay minimum wage in violation of the FLSA, breach of contract, and various other state-law claims. Appellees removed the action to federal district court. The district court exercised supplemental jurisdiction over Appellants' state-law claims, and granted Appellees' motion for summary judgment on all claims save Habibi's FLSA claim. The district court partially granted Habibi's motion for summary judgment on his FLSA claim, finding that he was a non-exempt employee but also that BAE IT LLC's violation of the FLSA was not willful. The instant cross-appeals followed.

## II.

We first address Appellants' argument that the district court lacked subject-matter jurisdiction over this action because the Assignment Agreement contained a forum-selection clause. We review de novo the district court's subject-matter jurisdiction determinations. *Lontz v. Tharp*, 413 F.3d 435, 439 (4th Cir. 2005).

Appellants maintain that the forum-selection clause in the Assignment Agreement mandates that all disputes be resolved in Fairfax County, Virginia in state court. The Assignment Agreement contains a clause that states, "In the event that such good faith negotiations do not result in a resolution of a dispute, either party *shall be free to* pursue its rights at law or equity in a court of competent jurisdiction in Fairfax County, Virginia." J.A. 944 (emphasis added). Appellees respond that this clause is permissive, providing merely that either party may litigate in Fairfax County, Virginia and operating as a consent to personal jurisdiction there by both parties.

A general maxim in interpreting forum-selection clauses is that "an agreement *conferring* jurisdiction in one forum will not be interpreted as *excluding* jurisdiction elsewhere unless it contains specific language of exclusion." *John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imp. and Distrib., Inc.*, 22 F.3d 51, 53 (2d Cir. 1994) (emphasis in original) (internal quotations omitted). In spite of this general rule, Appellants rely on *Excell, Inc. v. Sterling Boiler & Mechanical, Inc.*, 106 F.3d 318 (10th Cir. 1997), in arguing that the Assignment Agreement requires resolution in Virginia state courts.

However, the forum-selection clause at issue in *Excell* stated, "Jurisdiction shall be in the state of Colorado." *Id.* at 320. That forum-selection clause was mandatory, the court explained, as it contained clear language stating that jurisdiction was only appropriate in Colorado, the designated forum. *Id.* at 321. By contrast, the *Excell* court cited the following as an example of a permissive forum-selection clause: "The parties agree that . . . the courts of the State of Michigan shall have personal jurisdiction . . . ." *Id.* (internal quotations omitted). Although both clauses, like the one in the instant case, use the word "shall," the word's meaning differs with context.

Considering context here, we believe that the forum-selection clause in the Assignment Agreement is more like the permissive clause noted by the *Excell* court in that it permits jurisdiction in one court but does not prohibit jurisdiction in another. The phrase "shall be free to" is scarcely, if any, more restrictive than the word "may." Because the Assignment Agreement does not preclude federal jurisdiction, the district court had subject-matter jurisdiction over Habibi's FLSA claim pursuant to 28 U.S.C. § 1331 and properly exercised supplemental jurisdiction over Appellants' state law claims pursuant to 28 U.S.C. § 1367. We therefore conclude that the district court properly exercised subject-matter jurisdiction in this case.[1] Having so concluded, we turn next to Appellants' arguments that the district court erred in granting summary judgment in favor of Appellees.

### III.

We review de novo the district court's grant of summary judgment. *LeBlanc v. Cahill*, 153 F.3d 134, 148 (4th Cir. 1998). Summary judgment is appropriate when there is no genuine issue as to any material

---

[1]Appellants argue in their brief that the district court abused its discretion by accepting supplemental jurisdiction over Appellants' state law claims pursuant to 28 U.S.C. § 1367. We find this argument to be without merit. The federal and state law claims in Appellants' complaint arise out of the same interrelated series of events or transactions and derive from "a common nucleus of operative fact," *White v. County of Newberry*, 985 F.2d 168, 171 (4th Cir. 1993). Additionally, none of Appellant's claims raise "novel or complex issue[s] of state law," 28 U.S.C. § 1367(c).

fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Although in their brief Appellants argue that the district court's granting summary judgment in favor of Appellees on all counts was erroneous, at oral argument Appellants focused on their breach of contract claim against Appellees.[2]

Appellants maintain that Appellees breached the Assignment Agreement by exercising the option to purchase IC-WEL from Appellants but failing to follow through on their obligation to purchase. Appellants argue that Appellees exercised the option to purchase by (1) filing a provisional patent application for the IC-WEL software and (2) exercising dominion and control over IC-WEL by marketing the software. The Assignment Agreement provides that the option is exercised "upon payment of the purchase price." J.A. 940. Virginia law holds that the language of an option determines the method of the required acceptance. *Hart v. Hart*, 544 S.E.2d 366, 373 (Va. Ct. App. 2001).

Despite Appellants' arguments to the contrary, we are unconvinced that the plain and clear language of the Assignment Agreement allowed for any other means of acceptance of the option to purchase IC-WEL than by tendering of the purchase price. It is undisputed that BAE IT LLC never paid the agreed-upon purchase price of $1.5 million for IC-WEL. However, even if BAE IT LLC could have exercised the option by some other method, Appellants identify no facts from which a reasonable jury could conclude that BAE IT LLC did so.[3]

---

[2]Having considered the parties' arguments regarding the other counts, we find that the district court's grant of summary judgment to Appellees on those counts was proper.

[3]Appellants' arguments that BAE IT LLC exercised the option by filing a provisional patent application and by marketing IC-WEL are unavailing. BAE IT LLC filed the provisional patent application to protect its possible ownership rights in IC-WEL and it is undisputed that after terminating Habibi, BAE IT LLC sent him all of the application materials and advised him he was free to pursue a patent on his own. Additionally, BAE IT LLC marketed IC-WEL pursuant to the express terms of the Assignment Agreement, without claiming ownership of IC-WEL and directing all potential licensees to Habibi. Clearly, neither activity constituted exercise of the purchase option.

IV.

We now address Appellees' cross-appeal. Appellees contend that the district court improperly held that Habibi was a non-exempt employee under the FLSA and therefore granted partial summary judgment to Habibi on his FLSA claim. Again, we review de novo the district court's summary judgment determinations. *LeBlanc*, 153 F.3d at 148.

A.

We begin with an overview of the categories of employees who are statutorily exempted from the FLSA's requirements and the regulations defining such categories. The FLSA generally entitles covered employees to a minimum wage and compensation at one and one-half times the regular rate of pay for hours worked in excess of forty hours per week. 29 U.S.C. §§ 206(a), 207(a)(1). Specific categories of employees are, however, excluded from coverage. Under § 13(a)(1) of the FLSA, "any employee employed in a bona fide executive, administrative, or professional capacity . . . or in the capacity of outside salesman" is exempt from these minimum-wage and overtime pay requirements. 29 U.S.C. § 213(a)(1).

Congress has granted the Secretary of Labor ("Secretary") "broad authority to define and delimit" the scope of these exemptions. *Auer v. Robbins*, 519 U.S. 452, 456 (1997). Pursuant to her authority, the Secretary has promulgated regulations defining and delimiting the exemptions for executive, administrative, professional, outside sales, and computer employees. 29 C.F.R. Part 541. Each individual exemption is defined in part by the nature of the employee's primary duty. An employee's "primary duty" is "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700. Thus, for example, to meet the primary duty test of the outside sales exemption, the employee must be "customarily and regularly engaged away from the employer's place or places of business in performing" sales. 29 C.F.R. § 541.500(a)(2).

Some of the individual exemptions have other requirements as well. The most common additional requirement, relevant here, is a salary test. To qualify as exempt under the executive, administrative,

or professional exemptions, employees generally must, in addition to meeting the primary duty tests, be paid on a salary or fee basis and receive compensation of at least $455 per week. 29 C.F.R. §§ 541.100, 541.200, 541.300. The outside sales exemption, however, does not contain a salary test. *See* 29 C.F.R. § 541.500(c).

In addition to the individual exemptions just described, the Secretary has also crafted a hybrid exemption. This so-called "combination exemption" provides:

> Employees who perform a combination of exempt *duties* as set forth in the regulations in this part for executive, administrative, professional, outside sales and computer employees may qualify for exemption. Thus, for example, *an employee whose primary duty involves a combination of exempt administrative work and exempt executive work may qualify for exemption*. In other words, work that is exempt under one section of this part will not defeat the exemption under any other section.

29 C.F.R. § 541.708 (emphasis added). It is the interrelationship of the individual exemptions and the combination exemption that concerns us here.

It is undisputed that Habibi is not exempt under the independent tests of the individual exemptions. He does not meet the salary requirement of the administrative exemption, the one that most closely approximates his job duties, because he was paid an hourly wage and never made $455 or more per week. Nor does he appear to qualify for the outside sales exemption. Appellees do not challenge the district court's finding that Habibi did not customarily and regularly sell outside its place of business; indeed, the record reflects that he only went on four sales calls during his ten months of employment, and primarily worked at BAE IT LLC's headquarters.[4]

---

[4]For that matter, Appellees have not argued at any stage of the litigation that Habibi is FLSA-exempt under any individual exemption other than the combination exemption. Nor did they request, should we not accept their interpretation of the combination exemption, that we remand for consideration of another exemption in the alternative.

The question then arises as to whether Habibi can qualify for the combination exemption, having failed to fully satisfy the requirements of the individual exemptions. The district court held that he could not. It concluded that because Habibi did not qualify for either the administrative or the outside-sales exemptions as defined by the regulations, he could not qualify for the combination exemption, either; Appellees' failure to pay Habibi a minimum wage was therefore a violation of the FLSA. Appellees challenge this conclusion on appeal, arguing that the combination exemption does not require that Habibi meet the administrative exemption's salary test. To aid in the decisional process, this court requested that the Secretary of Labor file an amicus brief explaining her interpretation of the combination-exemption regulation.[5]

Because the Secretary has proffered her interpretation of the combination-exemption regulation, we do not analyze it de novo. Rather, the Secretary's interpretation of her own combination-exemption regulation in opinion letters and in her amicus brief to this court is entitled to deference and is "controlling unless plainly erroneous or inconsistent with the regulation." *Auer*, 519 U.S. at 461 (internal quotations omitted) (deferring to the Secretary of Labor's interpretation of the combination-exemption regulation in amicus brief); *see also Acs v. Detroit Edison Co.*, 444 F.3d 763, 769-70 (6th Cir. 2006) (opinion letter interpreting Secretary of Labor's regulation entitled to controlling deference).[6] We now turn to an analysis of the regulation in light of the Secretary's interpretation.

---

[5]The precise questions we posed to the Secretary were:

Can an employee qualify for the combination exemption without independently qualifying for any other exemption? If so, what standards guide the determination of whether the requirements of such an exemption are met? For example, if the administrative or executive employee exemptions are at issue, must an employee satisfy the salary test to qualify for a combination exemption when the characteristics of other exemptions (e.g., the outside sales exemption) are considered?

[6]The fact that the Secretary's interpretation is presented to us in a legal brief does not, in these circumstances, diminish the deference we must accord it. The Supreme Court addressed this very issue in *Auer* when it

B.

We begin our consideration of the scope of the combination exemption with the language of the regulation itself. We bear in mind, as we must, the Supreme Court's guidance that the exemptions are to be "construed narrowly against the employer seeking to assert them," *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960), and that the employer bears the burden of proving that employees are exempt, *Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 206 (1966).

By its terms, the combination-exemption regulation focuses solely on the employee's job duties. That is, it is the "combination of exempt duties" that "may qualify [an employee] for exemption." 29 C.F.R. § 541.708. The example provided by the regulation highlights this singular focus: "an employee whose primary duty involves a combination of exempt administrative work and exempt executive work may qualify for the exemption." *Id.* The combination-exemption regulation does not expressly include or exclude any of the other requirements, such as salary tests, of the individual exemptions.

The silence of the regulation regarding the other requirements of the individual exemptions yields two possible interpretations. The first, as suggested by Appellants, reads the combination-exemption regulation to provide an alternative method for satisfying the primary-duty test, without abrogating the other requirements needed for the exemption to attach. This interpretation gives full effect to the textual focus of the regulation on job duties only and also comports with the maxim that exemptions are to be "construed narrowly against the employer seeking to assert them." *Arnold*, 361 U.S. at 392. The other

deferred to an amicus brief it requested of the Secretary of Labor. *See* 519 U.S. at 462. Here, as in *Auer*, "[t]he Secretary's position is in no sense a 'post-hoc rationalization' advanced by an agency seeking to defend past agency action" but rather "reflect[s] the agency's fair and considered judgment on the matter in question," *id. See also Long Island Care at Home, Ltd. v. Coke*, 127 S. Ct. ___, slip op. at 11 (2007) (citing *Auer* approvingly in a unanimous decision deferring to an agency interpretation of its regulation in an internal memorandum where the memorandum represents the agency's "considered views").

interpretation, proffered by Appellees, is that the combination exemption creates a new and independent exemption for any employee whose job duties represent a hybrid of the individual exemptions, regardless of whether the other requirements of those individual exemptions are satisfied.

In her amicus brief, the Secretary asserts her longstanding support of the first interpretation. According to the Secretary, the combination exemption addresses the situation that exists when an employee does not meet the primary-duty requirement of any individual exemption. In such cases, an employee may nonetheless be exempt from the FLSA's minimum-wage requirements pursuant to the combination exemption, which permits considering different exempt duties together for purposes of meeting the primary-duty test. Thus, an employee performing duties that fall under more than one individual exemption, none of which separately represents her primary duty, may be exempt under the combination exemption if those duties, when combined, constitute her primary duty. Amicus Br. at 4-5; *see also* Wage and Hour Opinion Letter Wage and Hour Opinion Letter (Aug. 11, 1943), at 2 ("[I]n proper cases a combination exemption under two or more sections of Regulations, Part 541, may operate to exempt an employee performing some duties falling with more than one of these sections."). In other words, the combination exemption provides a mechanism for cobbling together different exempt duties for purposes of meeting the primary-duty test. *See* 29 C.F.R. § 541.708; *see also Auer*, 65 F.3d at 722; Wage and Hour Opinion Letter (Aug. 11, 1943), at 2.

Although the combination exemption permits the blending of exempt duties for purposes of defining an employee's primary duty, it does not, according to the Secretary, relieve employers of their burden to independently establish the other requirements of each exemption whose duties are combined. Amicus Br. at 4-6. In the Secretary's view, then, the combination exemption cannot apply to an employee with administrative job functions constituting part of her "primary duty" unless the employee also meets the administrative exemption's salary requirement. Since Habibi does not meet the salary requirement, he would not, under the Secretary's approach, qualify for exemption under the FLSA.

As noted above, the Secretary's interpretation of her own regulation is "controlling unless plainly erroneous or inconsistent with the regulation." *Auer*, 519 U.S. at 461 (internal quotations omitted). Deference to the Secretary is particularly appropriate when the regulation itself is ambiguous. *See Christensen v. Harris County*, 529 U.S. 576, 588 (2000); *Humanoids Group v. Rogan*, 375 F.3d 301, 306 (4th Cir. 2004).

Appellees argue that the Secretary's interpretation is inconsistent with the plain meaning of the regulation and is therefore entitled to no deference. That is, Appellees contend that the regulation unambiguously classifies as exempt any employee whose various job functions might be considered jointly to meet the primary-duty test of the combination exemption, even if no other requirements of the individual exemptions are satisfied. Appellees point to the regulation's silence regarding these other requirements of the individual exceptions as evidence that they were not intended to be incorporated into the combination exemption. Appellees further contend that to require employers to prove that an employee independently meets the requirements of each individual exemption sought to be combined would render the combination exemption superfluous.[7]

We are not unsympathetic to Appellees' views, nor can we say that their interpretation of the regulation is an unreasonable one. We are

---

[7]To bolster their textual argument, Appellees highlight a change made to the combination-exemption regulation in the 2004 revisions to the Part 541 exemptions. The prior combination-exemption regulation stated that the stricter of the salary requirements of the individual exemptions being combined must be met in order to qualify for the combination exemption. 29 C.F.R. § 541.600 (2003). That is, the regulation itself referred to the salary tests. The new regulation, applicable here, does not. Appellees contend that we should infer that the revisions were intended to eliminate the requirement of a salary test for an employee such as Habibi. We need not guess as to the Secretary's intent in updating the regulation, however, because the Secretary's brief makes clear her interpretation of the present iteration of it. This interpretation is strengthened by the fact that the preamble to the proposed amended regulations state that the changes were made "to simplify and update the current regulations," 68 Fed. Reg. 15,560, 15,573 (Mar. 31, 2003), not to effect a major alteration in how exemptions are construed.

unable to conclude, however, that the language of the regulation compels this reading. In fact, rather than the Secretary's interpretation rendering the combination exemption superfluous, it can be equally strongly argued that Appellees' interpretation has the potential to render the *individual* exemptions superfluous. Under Appellee's reading, an employee who performs mostly administrative work but was not exempt because he fails the salary test could nevertheless be considered exempt because he performs some proportion, however small, of outside-sales work as well. Under such scenario, an employer could remove an employee under the salary floor from the protections of the FLSA by simply combining his exempt administrative work with other exempt duties. Read in this way, the combination exemption potentially dramatically expands, rather than contracts, the universe of statutory exemptions—an interpretation the Supreme Court cautions against. *See Arnold*, 361 U.S. at 392.

In any case, the existence of two arguably plausible but conflicting interpretations convinces us that the combination-exemption regulation is at best ambiguous. Despite Appellees' arguments to the contrary, the regulation's silence regarding the additional requirements of the individual exemptions could equally well support the Secretary's position that the combination exemption combines job functions into a primary duty, rather than creating a new, independent test for exempt status. Because of this ambiguity, and because the Secretary's interpretation is consistent with the plain meaning of the regulation, we are bound to defer to it. *Auer*, 519 U.S. at 461.

Our deference to the Secretary's interpretation is all the more warranted because the Department of Labor ("DOL") has long interpreted the combination-exemption regulation in a manner consistent with that presented in the Secretary's brief. For example, opinion letters from the DOL's Wage and Hour Division accord with the Secretary's interpretation. *See* Wage and Hour Opinion Letter No. 298, 61-66 CCH-WH ¶30,901 (Sept. 25, 1964) (employee performing executive and outside-sales duties must meet the salary test for executive employees in order to be exempt as a combination executive/outside-sales employee under the Part 541 regulations); Wage and Hour Opinion Letter (July 31, 1951), at 2 (employee must meet the salary requirements of the executive exemption to be exempt under a combination executive/outside-sales exemption).

We also note that other courts have interpreted the regulation in harmony with the Secretary's view. *See Shockley v. City of Newport News*, 997 F.2d 18, 25-26 (4th Cir. 1993) (requiring city to prove, for application of the combination executive/administrative exemption, that police officers met the salary test and that each officer's primary duty was a combination of both management and administration); *Condren v. Sovereign Chemical Co.*, No. 97-3091, 1998 WL 165148, at *2, *6 (6th Cir. Apr. 3, 1998) (unpublished) (employee must meet each requirement of exemption, including salary test, "either outright, or through the combination exemption").[8] Similarly, courts have recognized that the salary test that applies to the executive, administrative, and professional exemptions also applies to the combination exemption when employers seek to combine duties from those exemptions with the duties from the outside-sales exemption, which does not contain a salary test. *See Condren*, 1998 WL 165148, at *2, *6; *Ballou v. DET Distrib. Co.*, No. 3-03:1055, 2006 WL 2035729, at *17 (M.D. Tenn. July 17, 2006) (employees not paid on a salary basis cannot qualify for a combination executive/outside-sales exemption). As noted above, such decisions are consistent with the Secretary's longstanding interpretation as expressed in the DOL's own opinion letters. *See* Wage and Hour Opinion Letter No. 298, 61-66 CCH-WH ¶30,901 (Sept. 25, 1964); Wage and Hour Opinion Letter (July 31, 1951), at 2.

In light of the convention requiring narrow construction of exemptions and the reasonableness and consistency of the Secretary's interpretation of the combination-exemption regulation, we conclude that Appellees have not carried their burden of proving that Habibi is exempt from the minimum-wage and overtime-pay requirements of the FLSA. Therefore, we affirm the district court's granting of summary judgment to Habibi on the issue of his status under the FLSA.[9]

---

[8]The Sixth Circuit permits citation of its unpublished opinions without limitation. *See* 6th Cir. R. 28(g); *cf.* Fed. R. App. P. 32.1(a).

[9]Appellants' complaint alleged that Appellees "knowingly and intentionally failed to pay" Habibi minimum wage and compensation due. J.A. 40. The district court concluded that "[t]he undisputed evidence is BAE IT LLC's classification of Habibi as an exempt employee under the combination exemption[, although incorrect,] was done in good faith." *IntraComm, Inc. v. Bajaj*, No. 05-0955, 2006 U.S. Dist. LEXIS 96177, at *10 (E.D. Va. Apr. 19, 2006). Given the ambiguity as to the regulation's application, we agree.

## V.

For the foregoing reasons, we affirm the district court's granting of summary judgment to Appellees on Appellants' state-law claims. We also affirm the district court's grant of partial summary judgment to Appellant Habibi on his FLSA claim, finding that he was a non-exempt employee entitled to minimum wage under the FLSA but that Appellees' violation of the FLSA was not willful.

The judgment of the district court is accordingly

*AFFIRMED.*