# Order

**Michigan Supreme Court**
**Lansing, Michigan**

May 27, 2016

151447

CHARLIE B. HOBSON AND
MARY L. HOBSON,
      Plaintiffs-Appellees,

v

INDIAN HARBOR INSURANCE COMPANY,     SC: 151447
XL INSURANCE AMERICA, INC., and XL     COA: 316714
INSURANCE COMPANY OF NEW YORK, INC.,     Wayne CC: 12-008167-CK
      Defendant-Appellants,

and

WILSON INVESTMENT SERVICE &
CONSTRUCTION, INC., WILSON INVESTMENT
SERVICE, CRESCENT HOUSE APARTMENTS,
CRESCENT HOUSE APARTMENTS, L.L.C., W-4
FAMILY LIMITED PARTNERSHIP, W-4 FAMILY
L.L.C., and JAMES P. WILSON,
      Defendant-Appellees.

_____/

Robert P. Young, Jr.,
*Chief Justice*

Stephen J. Markman
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen,
*Justices*

On May 4, 2016, the Court heard oral argument on the application for leave to appeal the March 10, 2015 judgment of the Court of Appeals. On order of the Court, the application is again considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court.

ZAHRA, J. (*concurring*).

Although the question whether the total pollution exclusion endorsement (the Endorsement) of the underlying commercial general liability (CGL) policy precludes coverage when applied to the facts presented in this case is an interesting one, I nonetheless conclude the application of the defendant insurers[1] for leave to appeal should be denied.

Defendant is correct that this Court has made it abundantly clear that Michigan does not interpret insurance contracts under the rule of reasonable expectations or any rule of construction comparable to it. *Rory v Continental Ins Co,* 473 Mich 457, 469-470 (2005); *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 63 (2003). Insurance contracts are

_____

[1] Although there were numerous defendants, only Indian Harbor Insurance Company, XL Insurance America, Inc., and XL Insurance Company of New York, Inc., appealed. For the sake of simplicity, I will refer to the appellants in the singular as "defendant" throughout this statement.

interpreted according to their plain terms. "Well-settled principles of contract interpretation require one to first look to a contract's plain language. If the plain language is clear, there can be only one reasonable interpretation of its meaning and, therefore, only one meaning the parties could reasonably expect to apply." *Singer v American States Ins,* 245 Mich App 370, 381 n 8 (2001).

Under this rule of interpretation, defendant has presented a colorable argument that the Endorsement, which altered "Exclusion f" and removed the "hostile fire" exception from that exclusion, operates literally to exclude any damage from smoke. Yet I also believe that under the same rule of contract interpretation, a reasonable argument can be advanced that, notwithstanding the removal of the hostile fire exception, smoke did not discharge, disperse, seep, migrate, release, or escape in relation to the insured property. The CGL policy insures the entire apartment building in which the fire began. Before the Endorsement, damage caused by smoke wholly *within* the apartment building was excluded unless it was the result of a "hostile fire."[2]

Exclusion f originally provided:

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) *At or from any premises*, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

* * *

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"[.] [Emphasis added.]

The Endorsement at issue provides that Exclusion f "is replaced by the following":

This insurance does not apply to:

**f. Pollution**

---

2 Under the CGL policy, " '[h]ostile fire' means one which becomes uncontrollable or breaks out from where it was intended to be."

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

Under the original Exclusion f, damage caused by "smoke" was excluded only when it was discharged, was dispersed, seeped, migrated, was released, or escaped "[*a*]*t or from* any premises . . . owned or occupied by . . . any insured." (Emphasis added.) The original provision went on to except from this exclusion damage caused by "heat, smoke or fumes from a 'hostile fire'[.]"

Defendant points out that the Endorsement removed the hostile-fire exception to Exclusion f that otherwise would have allowed coverage in this case for smoke damage at the insured property. But the Endorsement also removed the restriction that had initially excluded smoke damage only if it had moved "at or from" the insured property. Although the Endorsement still requires the discharge, dispersal, seepage, migration, release, or escape of pollutants, the Endorsement no longer requires that the pollutants do so *at* the insured property.

Had the smoke been discharged, been dispersed, seeped, migrated, been released, or escaped from the apartment building or into the apartment building, the CGL policy would very likely exclude the resulting damage. But because the CGL policy no longer expressly excludes smoke damage if the smoke had moved "at" the insured property, defendant's argument that the "smoke from the fire that started in another unit had to have dispersed, seeped, or migrated into the Plaintiffs [sic] unit, and had to have been released or escaped from the unit where the building manager allegedly started the fire" is questionable and without any support in the language of the policy. The CGL policy does not differentiate between individual units within the apartment building. Under the Endorsement, once smoke has been produced "at" the insured premises, it must still be discharged, be dispersed, seep, migrate, be released, or escape from the insured premises. Otherwise, the Endorsement would simply have been phrased to exclude " '[b]odily injury' or 'property damage' which would not have occurred in whole or part but for actual, alleged or threatened 'pollutants' at any time."

As noted by defense counsel during oral argument, this particular aspect of the insurance policy and its Endorsement were not developed by plaintiffs in the lower courts.[3] Relying on its criticisms of the unpublished opinion of the Court of Appeals,[4] defendant would have this Court limit its review of the policy and Endorsement to the removal of the hostile-fire exception to Exclusion f and ignore the other changes to the policy brought about by the Endorsement. I decline to accept defendant's invitation. Thus, while this case presents an interesting question of contract interpretation, because the record is undeveloped with regard to what constitutes a discharge, dispersal, seepage, migration, release, or escape under the Endorsement, I agree with my colleagues that leave should be denied.

BERNSTEIN, J., not participating due to his prior relationship with The Sam Bernstein Law Firm.

---

[3] Not only was there no legal development of this particular aspect of the Endorsement, there also was no factual development of the instant case because defendant insurer denied its insured a defense to plaintiffs' claims. Defendant denied its duty to defend its insured because, it maintained, the underlying claim was based exclusively on damages caused by smoke, which is defined as an excluded pollutant under the policy. Stated more simply, defendant denied its duty to defend because it believed the underlying claim in no way alleged damages resulting from fire. Defendant's position is puzzling. While the complaint does in large part allege smoke inhalation injuries, it also alleges damages "due to fire."

[4] *Hobson v Indian Harbor Ins Co*, unpublished opinion per curiam of the Court of Appeals, issued March 10, 2015 (Docket No. 316714).



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

May 27, 2016



Clerk

a0524