QUICKEN LOANS INC., Plaintiff,

v.

RE/MAX, LLC, Defendant.

Case Number 16–13233

United States District Court,
E.D. Michigan, Southern Division.

Signed October 31, 2016

---

Jeffrey B. Morganroth, Morganroth & Morganroth, Birmingham, MI, for Plaintiff.

Gerald J. Gleeson, II, Thomas W. Cranmer, Miller Canfield Paddock & Stone, PLC, Troy, MI, for Defendant.

## OPINION AND ORDER GRANTING MOTION TO TRANSFER VENUE

DAVID M. LAWSON, United States District Judge

Plaintiff Quicken Loans, Inc. and defendant RE/MAX, LLC entered into a series of agreements to discuss and eventually implement a strategic marketing partnership. When the relationship unraveled, Quicken Loans commenced the present action in this district and RE/MAX filed counterclaims. Now before the Court is RE/MAX's motion to transfer venue to the United States District Court for Colorado, based on a forum selection clause contained in the marketing agreement. Quicken Loans opposes the motion, and points to a preliminary agreement that also contains a forum clause that recognizes Michigan as an appropriate venue for dispute resolution. Quicken Loans contends that the two forum selection clauses are inconsistent and cancel each other, allowing the Court to make the venue determination on a clean slate. The two clauses, however, can be reconciled: the Colorado venue clause is a mandatory forum selection clause, while the Michigan clause is permissive only. The plain language of the contract, when read in light of applicable Supreme Court precedent, mandates that the present case be transferred to United States District Court for the District of Colorado. The defendant's motion, therefore, will be granted.

### I.

Defendant RE/MAX is company that provides real estate brokerage franchise services, and plaintiff Quicken Loans is a residential mortgage lender. Quicken Loans alleges that in the summer of 2015, RE/MAX contacted it about a potential marketing alliance. Apparently, the two companies had embarked on business discussions much earlier than that, however, because they entered into a non-disclosure agreement (NDA) on February 13, 2014, which had a three-year duration.

Meanwhile, Quicken Loans alleges, the discussions in the summer of 2015 were conducted under some time constraints, as RE/MAX allowed only a "two-week window" to complete an agreement. They signed a Strategic Marketing Alliance Agreement (SMAA) on July 9, 2015, which was to take effect on October 15, 2015. Quicken Loans alleges that the SMAA required RE/MAX to provide it with various forms of advertising, affiliate training, event participation, and promotion of Quicken Loans to RE/MAX franchisees and affiliates. However, Quicken Loans alleges, during this time, certain regulatory changes occurred and related federal interpretations were issued, all of which impacted the legality and viability of the SMAA. The parties subsequently signed a first amendment to the SMAA on November 10, 2015 in an attempt to address the new regulatory interpretations. Nonetheless, Quicken Loans alleges, RE/MAX did not perform its obligations under the SMAA. When further negotiations to resolve the misunderstandings between the parties failed, Quicken Loans filed a five-count complaint in this Court. Shortly thereafter, RE/MAX filed its motion to change venue.

The original NDA contained a choice of law paragraph, which included the following language:

> Choice of Law. This Agreement will be governed by and construed in accordance with the laws of the State of Michigan without giving effect to choice of law principles. *The parties agree that Michigan is a reasonably convenient place for the trial of cases arising under this contract.* Agreement to Michigan as the forum for litigation was not obtained by misrepresentation, duress, the abuse of economic power, or other unconscionable means.

Pl.'s Resp. to Mot. to Transfer, Ex. F (NDA) § 8 (emphasis added). However, the SMAA, which was signed later, contained a section entitled "Governing Law and Jurisdiction," which stated:

> This Agreement, and the rights and obligations of the Parties hereunder, shall be governed by and constructed in accordance with the laws of the State of Colorado, without regard to its conflict of laws principles. In the event of any dispute arising out of this Agreement, the matter *shall be brought in a court of competent jurisdiction in the State of Colorado.* All parties hereto submit to the personal jurisdiction of such courts and waive any argument or contention that such courts constitute an inconvenient forum.

Compl., Ex. A (SMAA) § 12.10 (emphasis added). The first amendment to the SMAA does not appear to have altered the forum selection clause in the original SMAA.

Adding to the confusion, the SMAA also contained a provision that incorporated the NDA, under a section of the SMAA labeled "Confidentiality":

> (a) The Non-Disclosure Agreement entered into between the parties effective as of February 13, 2014 and attached hereto as Exhibit F is hereby incorporated by reference and *shall govern this*

*Section.* The term of that Non-Disclosure Agreement is hereby extended to match the term of this Agreement, as necessary.

Compl., Ex. A (SMAA) § 11.1(a) (emphasis added).

Quicken Loans filed its complaint in this Court on September 7, 2016 alleging five claims. On September 15, 2016, RE/MAX filed a motion to change venue under 28 U.S.C. § 1404(a), relying primarily on the forum selection clause, but also contending that Colorado is a more convenient forum for the parties. RE/MAX also answered the complaint and filed a three-count counterclaim. RE/MAX also filed a breach of contract suit against Quicken Loans in the district court in Colorado.

## II.

■ RE/MAX asks this Court to transfer this case to the District of Colorado under 28 U.S.C. § 1404(a). A district court may transfer any civil case, "[f]or the convenience of parties and witnesses, in the interest of justice, ... to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Both parties seem to accept that the case could have been brought in either district. And generally, when ruling on a motion to transfer venue under section 1404(a), "a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice'." *Moses v. Bus. Card Express, Inc.,* 929 F.2d 1131, 1137 (6th Cir. 1991); *see also Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 n.6, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981).

However, the presence of a valid forum selection clause alters this approach. In *Atlantic Marine Construction Co. v. U.S. District Court for the Western District of Texas*, ⸺ U.S. ⸺, 134 S.Ct. 568, 187 L.Ed.2d 487 (2013), the Supreme Court analyzed the defendant's request to transfer under section 1404(a), because the defendant had asked as an alternative to dismissal for incorrect venue that the case be transferred to another federal court. The Court noted that "[s]ection 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer." 134 S.Ct. at 580. The Court further explained that "[t]he calculus [of the *forum non conveniens* analysis] changes … when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum." *Id.* at 581 (quotation marks omitted). "The 'enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.'" *Ibid.* (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)). The Court held, therefore, that " 'a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.'" *Ibid.* (quoting *Stewart*, 487 U.S. at 33, 108 S.Ct. 2239). As the Court explained, "[t]he presence of a valid forum-selection clause requires district courts to adjust their usual [*forum non conveniens*] analysis in three ways." 134 S.Ct. at 581. First, the forum selection clause preempts the plaintiff's venue privilege, so that "the plaintiff's choice of forum merits no weight." *Ibid.* Second, because the parties made their choice of forum in their contract in advance of the dispute, the private interest factors are irrelevant to the analy-sis, because they "must [be] deem[ed] … to weigh entirely in favor of the preselected forum." *Ibid.* A court considering a forum selection clause must focus its analysis solely on the public interest factors, but "those factors will rarely defeat a transfer motion." *Id.* at 582. Third, when a party files a lawsuit in a forum other than prescribed by the contract's forum selection clause, in contravention of the contract, the transferor district's choice-of-law rules will not apply as they otherwise might, which is "a factor that in some circumstances may affect the public interest considerations." *Ibid.*

In this case, where there are two competing forum clauses, the Court must determine if either or both are valid, and whether they can be reconciled. The clauses here are part of the parties' contract. In a diversity case, state contract law usually provides the rules of decision. *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 372 (6th Cir. 1998). The competing forum clauses also contain competing choice of law provisions, one for Colorado and the other for Michigan. But that conflict is largely illusory, as the contract interpretation rules in the two states are congruent. *Compare Cagle v. Mathers Family Trust*, 295 P.3d 460, 464 (Colo. 2013) (holding that "[c]ontract law governs the issues relating to the interpretation and enforcement of a forum selection clause"), and *Weitz Co., LLC v. Mid–Century Ins. Co.*, 181 P.3d 309, 312 (Colo. App. 2007) (holding that "[i]n contract interpretation, we begin by giving words used their plain and ordinary meaning unless the intent of the parties, as expressed in the contract, indicates that an alternative interpretation is intended" (citing *Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo. 1990) (en banc))) *with Hobson v. Indian Harbor Ins. Co.*, 499 Mich. 941, 941–42, 879 N.W.2d 255 (2016) (holding

that "contracts are interpreted according to their plain terms. 'Well-settled principles of contract interpretation require one to first look to a contract's plain language. If the plain language is clear, there can be only one reasonable interpretation of its meaning and, therefore, only one meaning the parties could reasonably expect to apply' " (quoting *Singer v. American States Ins.*, 245 Mich.App. 370, 381 n.8, 631 N.W.2d 34 (2001)). Moreover, federal courts construing forum selection clauses apply federal common law, not the state law of the state in which the federal court sits, *Wong v. PartyGaming, Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009), although federal common law directs that forum selection clauses are to be interpreted by reference to ordinary contract principles, *In re Delta America Re Ins. Co.*, 900 F.2d 890, 892 (6th Cir. 1990).

■ Quicken Loans does not quarrel with the idea that the Colorado forum selection clause directs the litigation to the Colorado state and federal courts. Instead, it contends that the choice of law provision favoring Michigan in the NDA—which is incorporated into the SMAA—conflicts with the Colorado clause and cancels it out. There are at least two reasons why that is not so.

■■ First, the plain language of the Colorado clause *compels* the parties to litigate their disputes in Colorado, whereas the Michigan clause only *allows* litigation in Michigan. Courts often categorize forum selection clauses as either permissive or mandatory. *Glob. Satellite Commc'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1272 (11th Cir. 2004). "A permissive clause authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere. A mandatory clause, in contrast, 'dictates an exclusive forum for litigation under the contract.' " *Ibid.* (quoting *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1262 n.24 (11th Cir. 1999). The forum selection clause in the

SMAA states that cases dealing with disputes that arise from that agreement "*shall* be brought" in a court in Colorado. The word "shall" connotes mandatory language. *Gen. Elec. Co. v. G. Siempelkamp GmbH & Co.*, 29 F.3d 1095, 1099 (6th Cir. 1994). The Colorado clause plainly states that the parties *must* litigate their SMAA-derived disputes in that state.

■ The Michigan clause, on the other hand, is not a mandatory forum selection clause. It merely acknowledges that "Michigan is a reasonably convenient place for the trial of cases arising under" the NDA. It does not *require* that the parties bring their lawsuits there, only that they may do so. "[A]n agreement conferring jurisdiction in one forum will not be interpreted as excluding jurisdiction elsewhere unless it contains specific language of exclusion." *Intracomm, Inc. v. Bajaj*, 492 F.3d 285 (4th Cir. 2007) (quoting *John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imp. and Distrib. Inc.*, 22 F.3d 51, 53 (2d Cir. 1994)). The Michigan forum clause in the NDA does not contain "language of exclusion."

These two clauses are easily reconcilable. Although under the NDA, the parties agree that Michigan is a proper forum for litigation, other forums may be proper as well. And under the later-executed SMAA, the parties chose another forum—Colorado, where RE/MAX is located—as the exclusive forum for litigating their disputes. The latter is not cancelled out by the former, and it may be enforced by either party despite the forum language in the NDA.

Second, the Michigan clause in the NDA was not incorporated wholesale into the SMAA. Section 11 of the SMAA says that the NDA is incorporated into the SMAA and "shall govern *this Section*." Agreement § 11.1 (emphasis added). The plain meaning of that statement is that the

terms of the NDA applies to Section 11 only, which deals with "Confidentiality." The NDA was entered into to prevent the parties from disclosing confidential information. There is no indication that the Michigan clause was intended to govern anything other than disputes concerning confidentiality. In contrast, section 12.10 of the SMAA, by its terms, addresses *"any* dispute arising out of this Agreement." The broad language plainly was intended to cover all parts of the SMAA and all disputes arising under it.

█ Because the forum selection clause in the SMAA is valid and prevails over the Michigan clause in the NDA, it should be "given controlling weight in all but the most exceptional cases.'" *Atl. Marine Const.*, 134 S.Ct. at 581 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)). "Exceptional cases" include those in which the public interest factors do not favor the designated forum, although "those factors will rarely defeat a transfer motion." *Id.* at 582. Public interest factors include "the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft Co.*, 454 U.S. at 260 n.6, 102 S.Ct. 252 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509, 67 S.Ct. 839, 91 L.Ed. 1055). Quicken Loans has not identified any public interest factor that would disfavor transfer.

The Colorado forum selection clause channels disputes to courts "in the state of Colorado." That language indicates that the parties may select both state and federal courts, provided subject matter jurisdiction exists. *See Ingenium Techs. Corp. v. Beaver Aerospace & Def., Inc.*, 122 F.Supp.3d 683, 687 (E.D. Mich. 2015) (Holding that " 'a forum selection clause that specifies "courts of" a state limits jurisdiction to state courts, but specification of "courts in" a state includes both state and federal courts.' " (quoting *Simonoff v. Expedia, Inc.*, 643 F.3d 1202, 1205–06 (9th Cir. 2011)). Based on the SMAA, the United States District for the District of Colorado is a federal "district or division to which all parties have consented." 28 U.S.C. § 1404(a). Therefore, RE/MAX's motion to transfer venue will be granted.

### III.

In section 12.10 of the Strategic Marketing Alliance Agreement, the parties agreed that the state and federal courts of Colorado provide the exclusive forum for the litigation of disputes arising under that agreement. The parties have fully briefed the issues raised in the transfer motion, and oral argument is not necessary.

Accordingly, it is **ORDERED** that the motion be decided on the papers submitted. *See* E.D. Mich. LR 7.1(f)(2).

It is further **ORDERED** that the hearing on the defendant's motion to transfer venue scheduled for November 3, 2016 is **CANCELLED**.

It is further **ORDERED** that the defendant's motion to transfer venue [dkt. # 7] is **GRANTED**.

It is further **ORDERED** that the case is **TRANSFERRED** to the United States District for the District of Colorado.