SINGER v AMERICAN STATES INSURANCE

Docket No. 217148. Submitted June 14, 2000, at Grand Rapids. Decided
April 20, 2001, at 9:00 A.M. Leave to appeal sought.

Gerald E. Singer brought an action in the Muskegon Circuit Court
against American States Insurance, seeking to recover under a
homeowner's insurance policy for fire damage. Delaina Stauter had
obtained the policy from the defendant when she entered into a
land contract to purchase residential property owned by Singer.
The policy, which insured the whole property, not simply the
amount that Stauter owed under the land contract, listed Stauter as
the "named insured" and Singer as the "contract holder." The fire
occurred after Stauter fell behind in her payments on the land con-
tract, quitclaimed her interest to Singer, and became a tenant.
Neither Singer nor Stauter informed the defendant of their rescis-
sion of the land contract. The defendant denied the plaintiff's claim
on the basis that the plaintiff was not an "insured" under the policy
and did not have an insurable interest in the property. The court,
James M. Graves, Jr., J., denied the plaintiff's motion for summary
disposition and granted the defendant's motion for summary dispo-
sition. The plaintiff appealed with regard to his claim alleging
breach of contract. The Court of Appeals issued an opinion on
December 5, 2000 (Docket No. 217148), that reversed the order
granting the defendant summary disposition and remanded the
matter for entry of an order granting the plaintiff summary disposi-
tion and a determination of the amount of insurance benefits to
which the plaintiff is entitled. The Court of Appeals entered an
order on February 8, 2001, granting in part the defendant's motion
for rehearing and vacating the Court's December 5, 2000, opinion.
On April 20, 2001, the Court of Appeals entered a further order that
denied the defendant's motion for rehearing and ordered that the
opinion originally issued on December 5, 2000, and vacated on Feb-
ruary 8, 2001, be reissued as the opinion of the Court in this matter.

The Court of Appeals *held*:

1. The plain language of the policy contemplates that a party
other than an "insured" may be entitled to benefits. The policy
allows a named "insured" to collect an amount of proceeds propor-
tionate to the named insured's ownership interest in the property,

while also allowing a land contract vendor or mortgagee to collect an amount proportionate to its remaining ownership interest. The court erred in finding that the policy restricts its coverage to those named "insureds" under the policy.

2. The policy's designation of the plaintiff as a "contract holder" referred to his status as a land contract vendor to the insured property.

3. The mortgage clause of the policy provided that the plaintiff "contract holder" is entitled to benefits in the amount of his provable loss on the dwelling.

4. Even where a mortgagee or land contract vendor has become the fee owner of the insured property through foreclosure or default on the land contract, the mortgagee or vendor is generally entitled to coverage under a policy's standard mortgage clause.

5. The court erred in granting the defendant summary disposition and in denying summary disposition for the plaintiff. The order granting the defendant summary disposition must be reversed and the matter must be remanded for the entry of an order of summary disposition in favor of the plaintiff and a determination of the amount of benefits to which the plaintiff is entitled.

Reversed and remanded.

1. INSURANCE — HOMEOWNER'S INSURANCE — LAND CONTRACTS.

A land contract vendor that is clearly identified on the declaration page of a homeowner's insurance policy issued to the land contract vendee and covering the property assumes the same position and status as a mortgagee for purposes of applying the mortgage clause of the policy to govern the vendor's rights under the policy.

2. INSURANCE — HOMEOWNER'S INSURANCE — LAND CONTRACTS.

A standard mortgage clause in a homeowner's insurance policy constitutes a separate and distinct contract between a mortgagee and an insurance company for payment on the mortgage; a mortgagee or land contract vendor is generally held to be entitled to coverage under such a standard mortgage clause even in cases where the mortgagee or land contract vendor has become the fee owner of the insured property through foreclosure or default on the land contract.

*Halbower, Mabbitt & Halbower* (by *Matthew C. Halbower*), for the plaintiff.

*Roberts, Betz & Bloss, P.C.* (by *Michael T. Small*), for the defendant.

Before: SMOLENSKI, P.J., and ZAHRA and COLLINS, JJ.

ZAHRA, J. Plaintiff appeals as of right from a judgment following a jury verdict, challenging the trial court's orders granting defendant summary disposition of plaintiff's claim alleging breach of contract and denying plaintiff summary disposition of that claim.[1] We reverse the order granting defendant summary disposition and remand for entry of an order granting plaintiff summary disposition and for determination of the amount of insurance benefits to which plaintiff is entitled.

In 1991, plaintiff and Delaina Stauter entered into a land contract for the sale of residential property owned by plaintiff (the property). The purchase price was $21,000. Pursuant to the land contract, Stauter was required to insure the property. Stauter insured the property through various companies before purchasing a homeowner's policy from defendant in 1995 (the policy). The declaration page of the policy listed Stauter as the "named insured" and plaintiff as the "contract holder." The policy provided $45,800 coverage on the dwelling and $25,190 personal property coverage.

Eventually, Stauter fell behind in her payments on the land contract. Plaintiff agreed to allow Stauter to continue to reside in the home on the condition that she quitclaim her interest in the property to plaintiff and agree to pay rent. On June 28, 1996, Stauter quitclaimed her interest to plaintiff and became a tenant.

---

[1] Plaintiff does not challenge the jury's verdict of no cause of action with regard to his claims based on promissory estoppel and consumer protection.

Neither plaintiff nor Stauter informed defendant of their rescission of the land contract.

On August 25, 1996, a fire damaged the property.[2] It is undisputed that the policy was in effect at the time of the fire.[3] Stauter made a claim under the policy for her personal property, which defendant voluntarily paid. Plaintiff made a claim for damage to the dwelling. Defendant denied plaintiff's claim on the basis that plaintiff was not an "insured" under the policy and did not have an insurable interest in the property. Defendant contended that plaintiff's status as vendor or owner of the property did not, itself, entitle him to receive benefits under the policy. Plaintiff filed suit and both parties brought motions for summary disposition of plaintiff's claim alleging breach of contract. The trial court denied plaintiff's motion and granted summary disposition for defendant, reasoning that plaintiff was not entitled to any proceeds under the unambiguous language of the policy.

We review de novo a trial court's decision on a motion for summary disposition. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). Likewise, the interpretation of contractual language is an issue of law that is reviewed de novo on

---

[2] Although defendant suggests in its brief on appeal that plaintiff was responsible for the fire given that several other properties owned by plaintiff had been intentionally burned, defendant does not defend on that basis. Therefore, we do not speculate regarding plaintiff's involvement in the fire but, instead, restrict our analysis to the specific issue argued by the parties: whether plaintiff may be entitled to benefits under the language of the policy.

[3] The policy issued by defendant on August 7, 1995, was automatically renewed on August 7, 1996. Although defendant sent notices of cancellation to plaintiff and Stauter advising that the policy would be canceled because of nonpayment of the premium, that cancellation was not effective until September 8, 1996.

appeal. *Morley v Auto Club of Michigan,* 458 Mich 459, 465; 581 NW2d 237 (1998). In reviewing a motion for summary disposition brought under MCR 2.116(C)(10), we consider the affidavits, pleadings, depositions, admissions, or any other documentary evidence submitted in a light most favorable to the nonmoving party to decide whether a genuine issue of material fact exists. *Ritchie-Gamester v City of Berkley,* 461 Mich 73, 76; 597 NW2d 517 (1999); *Rollert v Dep't of Civil Service,* 228 Mich App 534, 536; 579 NW2d 118 (1998). All reasonable inferences are resolved in the nonmoving party's favor. *Hampton v Waste Management of Michigan, Inc,* 236 Mich App 598, 602; 601 NW2d 172 (1999).

To determine whether plaintiff may be entitled to benefits under the policy, we rely on the language of the insurance policy to interpret its terms under Michigan's well-established principles of contract construction. *Michigan Millers Mut Ins Co v Bronson Plating Co,* 445 Mich 558, 567; 519 NW2d 864 (1994). An insurance contract must be read as a whole and meaning given to all terms. *Auto-Owners Ins Co v Churchman,* 440 Mich 560, 566; 489 NW2d 431 (1992); *South Macomb Disposal Authority v American Ins Co (On Remand),* 225 Mich App 635, 653; 572 NW2d 686 (1997). The language of the contract is to be given its ordinary, plain meaning and technical, constrained constructions should be avoided. *Bianchi v Automobile Club of Michigan,* 437 Mich 65, 71, n 1; 467 NW2d 17 (1991); *Royce v Citizens Ins Co,* 219 Mich App 537, 542; 557 NW2d 144 (1996). Ambiguities in the policy are construed against the insurer, who is the drafter of the contract. *State Farm Mut Automo-*

*bile Ins Co v Enterprise Leasing Co*, 452 Mich 25, 38; 549 NW2d 345 (1996).

The parties do not dispute that Stauter was the only "named insured" under the policy and that plaintiff was not an "insured" as that term is expressly defined in the policy.[4] However, plaintiff argues that, as the named "contract holder," he is legally entitled to receive benefits for his loss on the dwelling. Plaintiff contends that the policy provides coverage for loss on the dwelling regardless of who owned the property at the time of the fire.

In arguing below regarding whether the policy allows a party other than an "insured" to collect benefits, the parties focused on the section of the policy designated "Section I—Conditions." That section states, in pertinent part:

> 1. Insurable Interest and Limit of Liability. Even if more than one person has an insurable interest in the property covered, we will not be liable to any one loss:
>
> a. to the "insured" for more than the amount of the "insured's" interest at the time of loss; or
>
> b. for more than the applicable limit of liability.

---

[4] The policy defines "insured" as follows:

(3) "insured" means you [any named insured] and residents of your household who are: a. your relatives; or b. other persons who are in the care of any person named above. . . . "insured" also means: c. with respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in 3.a. or 3.b. above. A person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner is not an "insured"; d. with respect to any vehicle to which this policy applies: (1) persons while engaged in your employ or that of any person included in 3.a. or 3.b. above; or (2) other persons using the vehicle on an "insured location" with your consent.

The trial court ruled that the section restricts coverage to those named "insureds" under the policy, deciding that the word "or" in subsection 1.a. must be construed as "and." Otherwise, the trial court reasoned, anyone with an insurable interest in the property of any kind, even if not named in the policy, could demand the full policy coverage limit even if their actual loss was far less than the policy limit amount. On that basis, the trial court found that plaintiff cannot recover any proceeds under the policy.

Adhering to well-settled principles of contract interpretation, we refuse to adopt the trial court's interpretation of "Section I—Conditions." The word "or" in subsection 1.a. plainly establishes that subsections 1.a. and 1.b are alternatives. Replacing that word with "and" significantly restricts the section's language to one specific set of circumstances. We refuse to read such a restriction into the policy that is directly contrary to the meaning that is plainly expressed. *Bianchi, supra; Royce, supra.*

Instead, we conclude that the plain language of "Section I—Conditions" contemplates that a party other than an "insured" may be entitled to benefits. The section references parties with insurable interests in the insured property. Reading the policy as a whole, an "insured" is not the only party that may have an insurable interest. "Section I—Conditions" plainly applies to circumstances where property is sold on land contract or where there is a mortgage on the property. That section unambiguously allows a named "insured" to collect an amount of proceeds proportionate to his ownership interest in the property, while also allowing a land contract vendor or mortgagee to collect an amount proportionate to its

remaining ownership interest. If defendant wanted "Section I—Conditions" to strictly limit coverage under the policy to named "insureds," it could have moved the phrase "to the 'insured' " in subsection 1.a. to the end of paragraph 1, plainly limiting the scope of paragraph 1 to any one loss to "insureds" exclusively.

We find further support for coverage of parties other than those designated as an "insured" in the policy's section involving "Loss Payment." That section states, in part: "We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment."

Given that the policy plainly provides that parties other than "insureds" may be entitled to proceeds, we turn our attention to whether plaintiff can be said to be entitled to proceeds under the present circumstances. Plaintiff is listed in the policy as "contract holder." Policy terms are given their commonly used meanings, in context, unless clearly defined in the policy. *Henderson v State Farm Fire & Casualty Co*, 460 Mich 348, 354, 356; 596 NW2d 190 (1999). Here, the title "contract holder" is not defined in the policy and there is no common meaning to assign to that general phrase. Indeed, the title "contract holder" may reasonably include any party holding any kind of contract. We conclude that the policy's designation of plaintiff as "contract holder" referred to his status as land contract vendor to the insured property. We consider that construction reasonable given that it is evident defendant issued the policy with the knowledge that Stauter was purchasing the property on land con-

tract,[5] nothing suggests that plaintiff had any other contractual relationship with Stauter at the time the policy was issued, and defendant did not specifically define "contract holder" to exclude a land contract vendor.

This Court has held that, in the absence of policy language expressly defining the rights of the parties to a land contract, a standard mortgage clause can be the mechanism by which the vendor collects benefits. *Cole v Michigan Mut Ins Co*, 116 Mich App 51, 55; 321 NW2d 839 (1982). Indeed, a land contract vendor and a mortgagee have substantially similar insurable interests in property insured by the vendee or mortgagor. In *Cole*, this Court recognized that a land contract vendor that is clearly identified on the declaration page of the policy assumes the same position and status as a mortgagee for purposes of applying a mortgage clause to govern the rights of the vendor under an insurance policy issued to the land contract vendee. *Id.* at 55-56.[6]

In the present case, the policy's "Mortgage Clause" provides, in pertinent part:

---

[5] The policy clearly identifies plaintiff as "contract holder." Moreover, defendant's conduct of sending plaintiff copies of the policy and notice of the policy's cancellation, see n 3, *supra*, indicates a recognition of plaintiff's insurable interest in the property.

[6] Given that *Cole* does not have precedential effect, see MCR 7.215(H)(1), we reaffirm that a land contract vendor stands in the same position as a mortgagee under a standard mortgage clause of an insurance policy and that a standard mortgage clause may be applied as the mechanism by which a vendor collects benefits in the absence of policy language expressly defining the rights of the parties to a land contract. It is noteworthy that, despite the fact that the rule expressed in *Cole* has stood unchanged since the case was published in 1982, defendant chose not to define the rights of a land contract vendor in the policy. Defendant should have clearly defined the rights of a "contract holder" if it intended to avoid the interpretation expressed in *Cole*.

> If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

Plaintiff was clearly identified as "contract holder" on the declaration page of the policy. Under the "Mortgage Clause," plaintiff, as "contract holder" standing in a substantially similar position as a mortgagee, is entitled to benefits in the amount of his provable loss on the dwelling.

We are compelled to reach that result regardless of the fact that Stauter quitclaimed her interest in the property to plaintiff before the fire.[7] It is well settled that a policy's standard mortgage clause constitutes a separate and distinct contract between a mortgagee and an insurance company for payment on the mortgage. *Marketos v American Employers Ins Co*, 240 Mich App 684, 692-693; 612 NW2d 848 (2000), citing *Cole, supra* at 55. Thus, even in cases where the mortgagee or land contract vendor has become the fee owner of the insured property through foreclosure or default on the land contract, the mortgagee or vendor is generally held to be entitled to coverage under

---

[7] The fact that neither plaintiff nor Stauter notified defendant of the quitclaim and the effective rescission of the land contract is not dispositive. Such notice was not required under the policy. The mortgage clause only requires notice of a "change in ownership" if defendant first denied an "insured's" claim. Defendant did not deny Stauter's claim in this case. Moreover, case law suggests that plaintiff's increased ownership interest resulting from the quitclaim did not constitute a "change in ownership" that warranted notice to defendant. See *Federal Nat'l Mortgage Ass'n v Ohio Casualty Ins Co*, 46 Mich App 587, 590-591; 208 NW2d 573 (1973) (establishing that a mortgagee's foreclosure on the insured property is generally regarded merely as an increase in ownership, rather than a "change in ownership" necessitating notice under a standard mortgage clause).

a policy's standard mortgage clause. *Cole, supra* at 55-56 (holding that the land contract vendors were entitled to insurance benefits when, before the fire that damaged the subject property, the vendors obtained a judgment of forfeiture based on the vendee's default on the land contract); *Capital Mortgage Corp v Michigan Basic Property Ins Ass'n*, 111 Mich App 393, 397; 314 NW2d 635 (1981) (determining that the policy's standard mortgage clause provided coverage for the mortgagee's interest in the insured property even when the mortgagee acquired fee title to the property); *Federal Nat'l Mortgage Ass'n v Ohio Casualty Ins Co*, 46 Mich App 587, 589-590; 208 NW2d 573 (1973) (holding that the mortgagee's foreclosure on the insured property did not extinguish its right to recover benefits under the policy covering the property); *Davis v Michigan Basic Property Ins Ass'n*, 701 F Supp 131, 133 (ED Mich, 1988) (holding that the land contract vendor was entitled to fire insurance benefits when the fire occurred after a judgment for possession was obtained by the vendor pursuant to summary forfeiture proceedings). It is undisputed that Stauter insured the whole property, not simply the amount that she owed under the land contract. Therefore, the amount for which defendant is liable depends on each parties' interest in the property, not any amount still owed under the land contract. See *Wilson v Fireman's Ins Co of Newark, New Jersey*, 403 Mich 339, 344; 269 NW2d 170 (1978).

In sum, plaintiff's status as "contract holder" entitles him to benefits under the policy for provable loss on the dwelling. Thus, the trial court erred in granting summary disposition for defendant and in denying

plaintiff's motion for summary disposition.[8] We note, however, that the amount of benefits to which plaintiff is entitled is not clear. Plaintiff's claim states that the actual value of the property at the time of the fire was $45,800, the maximum amount of coverage on the dwelling, and that the whole loss and damage was $81,453.32. Stauter purchased the property on land contract for $21,000 and an appraisal performed soon thereafter suggests that the property, including the dwelling and land, was worth $22,000. The actual cost of repairing or replacing the damaged dwelling is not

---

[8] We note that the parties' additional argument regarding whether plaintiff could reasonably expect coverage under the circumstances does not change that result. The declaration page of the policy lists plaintiff as "contract holder" along with plaintiff's address. Defendant sent plaintiff a copy of the policy. Stauter paid the full premium for the policy in 1995. Defendant sent plaintiff notice of the pending cancellation of the policy in August 1996. Under these circumstances, plaintiff could reasonably expect that the policy covered the property and that he had rights of recovery under the policy even after Stauter quitclaimed her interest. Our Supreme Court has recognized the reasonable expectation theory as a valid means of interpreting insurance contract language, see *Vanguard Ins Co v Clarke*, 438 Mich 463, 472-473; 475 NW2d 48 (1991), and we are bound to follow that precedent. However, we find it unnecessary to employ the reasonable expectations theory in this case given our resolution of the case in plaintiff's favor under the interpretation of the policy provisions discussed herein. Furthermore, we have considerable doubt regarding the usefulness and logic of examining what plaintiff could reasonably expect in order to interpret the policy. Well-settled principles of contract interpretation require one to first look to a contract's plain language. If the plain language is clear, there can be only one reasonable interpretation of its meaning and, therefore, only one meaning the parties could reasonably expect to apply. If the language is ambiguous, longstanding principles of contract law require that the ambiguous provision be construed against the drafter. Applied in an insurance context, the drafter is always the insurer. Thus, it appears that the "rule of reasonable expectations" is nothing more than a unique title given to traditional contract principles applied to insurance contracts, notwithstanding the Supreme Court's conclusion in *Vanguard Ins* that an insured's "reasonable expectations" can override the terms of an otherwise unambiguous insurance contract.

clear.[9] Nor is it clear whether plaintiff actually repaired or rebuilt the damaged dwelling. See MCL 500.2826 and *Smith v Michigan Basic Property Ins Ass'n*, 441 Mich 181, 189; 490 NW2d 864 (1992). Consequently, we reverse the order of summary disposition and remand the case to the trial court for entry of an order of summary disposition in favor of the plaintiff and a determination of the amount of benefits to which plaintiff is entitled.[10]

Reversed and remanded. We do not retain jurisdiction.

---

[9] The "loss settlement" policy provision states, in part, that defendant will pay

the cost to repair or replace after application of deductible and without deduction for depreciation, but no more than the least of the following amounts: (a) the limit of liability under this policy that applies to the building; (b) the replacement cost of that part of the building damaged for like construction and use on the same premises; or (c) the necessary amount actually spent to repair or replace the damaged building.

*        *        *

(2) We will pay no more than the actual cash value of the damage unless: (a) actual repair or replacement is complete; or (b) the cost to repair or replace the damage is both: (i) less than 5% of the amount of insurance in this policy on the building; and (ii) less than $2500.

[10] We note that the substance of the claim that plaintiff submitted must be examined on remand, not the manner in which plaintiff notified defendant of his alleged loss. The policy only specifies the procedure by which a "named insured" must notify defendant of loss. The amendatory endorsement expressing the duties of "the insured or someone acting on behalf of the insured" in the case of an accident or occurrence does not apply given that plaintiff made his claim on his own behalf, not on Stauter's behalf. Moreover, the procedure by which a mortgagee must notify defendant of loss applies only to circumstances where defendant first denies an "insured's" claim. If defendant desired to specify a procedure in regard to a "contract holder," it could have provided such language in the policy.