RALPH B. GUY, JR., Circuit Judge.
This is a dispute over whether there is insurance coverage for a million dollar loss sustained by defendant Lavdas Jewelry, Ltd., as the result of an armed robbery. The district court entered summary judgment for plaintiff Assurance Company of America, finding the insurance policy terms were unambiguous and did not provide coverage for Lavdas. Finding that the terms are ambiguous, we vacate the judgment of the district court.
I.
Defendant Lavdas Jewelry operates three jewelry stores in the Detroit, Michigan, metropolitan area. The business is owned by Nicholas Lavdas, who was at his store located in Warren, Michigan, the evening it was robbed — January 30, 2006. That store is located in a one-story strip center shopping plaza, with parking areas in front and some additional parking behind the store.
The night of the robbery, the jewelry store had closed to the public at 7:00 p.m. All but two people had left the store by approximately 7:30; those remaining were Nicholas Lavdas and employee Kathy Be-auvais. Just before she left, Lavdas had a brief conversation with Beauvais, who indicated she was going to spend the evening with her parents. Lavdas then went to his office to close the remaining open safe and prepare to leave, at which time he heard the store’s back door close. Moments later, he heard a knock on that same door. Lavdas opened the door to find Beauvais being held by three gunmen wearing ski masks. The gunmen forced their way into the store, pushing or pulling Beauvais with them. They tied Lavdas’s ankles and wrists, pushed him to the floor, and hit him with a gun, causing injuries to his head and face. Beauvais was also bound and hit with a gun. One or more of the gunmen went into Lavdas’s office, where loose diamonds and other items were taken from the open safe and surrounding area. When the gunmen left the building, Lavdas pushed one of the alarm system’s panic buttons and authorities arrived within minutes.
Lavdas insured his stores through plaintiff Assurance Co. of America. Using a form provided by plaintiff, Lavdas had completed a June 2005 application for insurance in which he provided information about many aspects of the business, including details of the alarm system. The alarm system at the location of the robbery consisted of a motion detector used when no one is in the store, a surveillance system, and a hold-up alarm system consisting of 4 hold-up or panic buttons. Under “WARRANTIES FOR PROPERTY ON DESCRIBED PREMISES AT ALL TIMES WHEN YOU ARE CLOSED FOR BUSINESS,” the application indicated that 99% of the value of the store’s property was kept in locked safes or' vaults. The answers given by Lavdas to the questions affected the policy premium, and the policy provided that the applica *434 tion was a part of the policy. If Lavdas gave false answers to the questions, the “policy [would] be null and void and there shall be no coverage.” The policy also provided, under the contract’s “Additional Conditions:”
2.....
b. Protective Safeguards You must maintain the protective safeguards stated by you to be in effect at a location when this coverage began.
If you fail to keep the protective safeguards:
(1) In working condition at a location; and
(2) In operation when you are closed to business;
coverage to which the protective safeguards apply is automatically suspended at that location. This suspension will last until the equipment or services are back in operation.
Lavdas made an insurance claim for over $1 million. Plaintiff denied the claim in a letter dated July 25, 2006, stating in part that
1. Lavdas Jewelry, Ltd., has breached certain warranties and safeguard endorsements of the policy including the policy provision which provides in pertinent part as follows:
E. Additional Conditions 2. b. Protective Safeguards Item (3) is hereby added:
(3) A minimum of 2 individuals, either employees, officers or owners must be on the premises at all times during business hours and when opening/closing for business.
The letter also informed Lavdas that plaintiff had commenced a declaratory judgment action in district court to “bring this matter to a just and prompt conclusion.”
Several months into the litigation, Lav-das sought leave to file a counter-complaint asserting breach of the insurance contract. Leave was granted by the court despite plaintiffs objection (in a motion for reconsideration) that it had not received notice of the defendant’s request. The parties filed cross-motions for summary judgment in September and October 2007. Plaintiff contended coverage was barred because two employees/officers/owners were not on the premises at the time of the loss, and because Lavdas failed to meet the alarm system requirements when the business was closed. Defendant asserted in its cross-motion that its alarm system was operational, but that in any event plaintiff had waived its reliance on the policy provision requiring that defendant keep its alarm system in operation “when [it is] closed to business.” The district court held oral argument on the motions, and made its determinations on the record, as follows:
I find the policy to be unambiguous. The store was closing, because not all the safes were locked. It was in the process of closing, and there was only one person present.
I think Mr. Black’s argument prevails. And for the reasons stated on the record, the Plaintiffs motion is granted. The Defendant’s counterclaims thus become moot.
The district court entered a summary written order reflecting its decision, from which defendant took this timely appeal.
II.
Summary judgment is appropriate where there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). We review the district court’s interpretation of the insurance contract and its summary judgment deter *435 mination de novo. See Duane Mgmt. Co. v. Prudential Ins. Co., 29 F.3d 245, 248 (6th Cir.1994). The parties agree that Michigan law governs the interpretation of the insurance policy at issue. See Himmel v. Ford Motor Co., 342 F.3d 593, 598 (6th Cir.2003), Hayes v. Equitable Energy Res. Co., 266 F.3d 560, 566 (6th Cir.2001).
Defendant asserts two related claims on appeal. First, it asserts that the district court erred in determining that the endorsement language quoted above barred coverage when the jewelry store was not “closing for business,” but had already closed for business more than half an hour earlier. It alternatively asserts that two people did remain on the premises at the time of the incident. Second, it asserts that the district court wrongly determined that if the business had been closed, the alarm system’s motion detector, rather than only cameras and panic buttons, had to be turned on.
Two terms require interpretation in the endorsement plaintiff expressly relied on in denying coverage to defendant— “premises” and “closing for business.” Defendant has argued that, because Lav-das was in the store and Beauvais was in the parking lot, two persons were on the “premises.” [1] The term “premises” is defined in the insurance contract as “the interior of that part of the building(s) which you occupy at the location(s) shown on the Declarations Page.” The district court did not err in interpreting “premises” to mean the interior of the store.
“Closing for business,” however, is neither defined in the policy nor in relevant Michigan case law. In making its determination, the district court considered the policy provision requiring two persons on the premises while the store is closing for business, and the provision requiring an operating alarm system when the store is closed for business. At the summary judgment argument, defendant pointed to a page of plaintiffs brief describing the store as “closed,” which plaintiff stated was not its position. Plaintiff clarified that its position was that the store was “closing for business” when it was robbed.[2] Defendant asserted the store was already closed for business, and that the alarm system was “operational,” as the panic buttons and surveillance system were in effect. Defendant pointed out that a person can’t be in the building with the motion detector on, as any person’s presence there would trigger the alarm, and that under plaintiffs reading of the policy, no one, regardless of the purpose of their presence on the premises (e.g., to take inventory or to perform building maintenance) may be in the store if it is closed.[3]
*436 Plaintiff does not dispute this point made by defendant — -that under its reading, if people are in the store when it is closed, defendant cannot maintain insurance coverage. In fact, plaintiffs counsel stated at argument that “what you do is that you have to have two employees present at closing. You set the alarm and you walk out of the store. And if you do that, there’s coverage.”[4] In response, defendant’s position about the policy was that
there only have to be two people on the premises when — you are during business hours, which we all agree doesn’t apply, and when the business, the “business” is opening and closing. Not the “premises.”
It doesn’t say you have to have two people inside the premises any time you enter or exit the premises. It doesn’t say that.
That’s what (plaintiffs counsel) Mr. Black — that’s how Mr. Black wants this policy to read; that unless there are two people in the premises when the premises are being entered and exited, if you don’t have that, then there’s no coverage.
But everything in this policy is written in relation to the operation of the business. And by their own admission, the business wasn’t operating anymore. It was closed. It was 40 minutes or so after the end of the operations. Everybody had gone. Mr. Lavdas was doing some other things. But the business was closed.
You only have to have one person in that premises at that time.
And the alarm system, that could work with a person inside that premises, was operational. They knew that. They knew what this alarm system was.
Now, could they have written this in a more clear fashion? Sure.
But why should they penalize Mr. Lavdas, who suffered a significant loss here, because the drafters of this policy didn’t make it as clear as they want it to be?
They want this policy to say your entire alarm system, every facet of your alarm system must be in operation at a certain time or you must have two people inside the building when the building is entered and exited.
Neither of those things are stated in this policy.
This argument was followed by the court’s grant of summary judgment for plaintiff, finding the “store” was “closing” because not all of the safes were locked, and that only one person was on the premises in violation of insurance provisions.[5]
Under Michigan law, insurance contracts are enforced according to their unambiguous terms. See Citizens Ins. Co. v. Pro-Seal Serv. Group, Inc., 477 Mich. 75, 730 N.W.2d 682, 685-86 (2007) (citing Henderson v. State Farm Fire & Cas. Co., 460 Mich. 348, 596 N.W.2d 190, 193-94 (1999)). An insurance contract is clear and unambiguous if it, “however inartfully *437 worded or clumsily arranged, fairly admits of but one interpretation.” Farm Bureau Mut. Ins. Co. v. Nikkei, 460 Mich. 558, 596 N.W.2d 915, 919 (1999). Ambiguity arises in an insurance contract when two terms irreconcilably conflict or “when its provisions are capable of conflicting interpretations.” Id. “ ‘If the language is ambiguous, longstanding principles of contract law require that the ambiguous provision be construed against the drafter. Applied in an insurance context, the drafter is always the insurer.’ ” Wilkie v. Auto-Owners Ins. Co., 469 Mich. 41, 664 N.W.2d 776, 787 (2003) (quoting Singer v. Am. States Ins., 245 Mich.App. 370, 631 N.W.2d 34, 41 n. 8 (2001)).
We cannot find, as the district court did, the “closing for business” language so straightforward as to be unambiguous. Under our reading, a reasonable interpretation of the contract could lead to both the district court’s determination that two people were required on the premises at the time of the loss, as well as a determination that two people were not required on the premises at the time of the loss, because business hours were over and the store was locked. Because the contract reasonably could be interpreted either way, we find the provision to be ambiguous, and VACATE the entry of summary judgment for the plaintiff and REMAND for further proceedings.

. Defendant has alternatively suggested that, if "premises” is to be interpreted as the interi- or, Ms. Beauvais was "on the premises" at the time of the loss, as she was pushed back into the store at the time of the robbery. This argument is not seriously pursued and lacks merit.

. Plaintiff highlights testimony of Lavdas in which he stated that he "was just closing the store” when the robbery occurred. Defendant’s position is that this testimony does not conflict with its argument that the business had already been closed at the time of the robbery and Lavdas was preparing to leave the building.

.Defendant argues such a reading would impose an "absurd and impossible condition on the policyholder,” as it would forbid any activity whatsoever at the store after it is closed to customers, citing Wembelton Development Co. v. Travelers Insurance Co., 45 Mich.App. 168, 206 N.W.2d 222, 225 (1973). Defendant also argues on appeal that we may consider "the reasonable expectations of the insured,” citing to Vanguard Insurance Co. v. Clarke, 438 Mich. 463, 475 N.W.2d 48, 52 (1991), but the rule was overruled by Wilkie v. Auto-Owners Insurance Co., 469 Mich. 41, 664 N.W.2d 776, 788 (2003).

. Plaintiff cites to cases such as H & S Pogue Co. v. Fidelity & Casualty Co. of New York, 299 F. 243 (6th Cir.1924), and Boesky Brothers Twelfth Street Corp. v. U.S. Fidelity & Guaranty Co., 267 Mich. 628, 255 N.W. 307, 308 (1934), where courts found no insurance coverage where sufficient employees or custodians were not "on duty,” none of which is on point here.

. The district court did not expressly base its decision on the provision concerning having the alarm system "[i]n operation when you are closed to business,” but referenced the provision in conversation with counsel during oral argument. Defendant’s claims on appeal address the provision, asserting that plaintiff has waived reliance on it as plaintiff did not invoke the provision either in denying the claim initially or in its complaint for declaratory judgment. We need not address this argument given our findings below.