# STATE OF MICHIGAN

# COURT OF APPEALS

BENTELER AUTOMOTIVE CORPORATION,

UNPUBLISHED
March 21, 2017

Plaintiff-Appellee/Cross-Appellant,

v

No. 328329
Wayne Circuit Court
LC No. 13-011361-CK

WELLINGTON INDUSTRIES, INC,

Defendant-Appellant/Cross-
Appellee.

Before: TALBOT, C.J., and MURRAY and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right following the trial court's entry of a final stipulated order dismissing all claims and counterclaims. At issue on appeal is the trial court's April 27, 2015 order denying in part defendant's motion to enforce a settlement between the parties; specifically, defendant challenges the trial court's determination that the agreed-upon release language was insufficiently broad to encompass indemnification claims relating to potential, future claims by third parties regarding allegedly defective parts.[1] Plaintiff cross-appeals the trial court's June 15, 2015 order resolving further cross-motions to enforce the settlement; specifically, plaintiff challenges the trial court's holding that it is not entitled to deduct (from amounts owed to defendant) a portion of the revenue received from the sale of scrap metal generated by defendant's production of parts for plaintiff. We reverse and remand in the main appeal, and affirm in the cross-appeal.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Plaintiff is a Delaware corporation headquartered in Auburn Hills, Michigan, and is a "Tier One" automotive parts supplier to many major vehicle manufacturers. Defendant is a Michigan corporation headquartered in Belleville, Michigan, and is a "Tier Two" automotive parts supplier that supplies parts to various Tier One automotive parts suppliers. In 2013, the parties entered into a series of agreements in which plaintiff outsourced to defendant the production of certain parts for Ford Motor Company.

---

[1] For ease of future reference, we will refer to such claims as the Indemnification Claims.

Later in 2013, a dispute arose between the parties after plaintiff declined to make payment as demanded for parts that defendant had produced. Plaintiff filed suit, alleging several breach of contract claims and seeking a declaratory judgment relative to defendant's obligations under various agreements. Plaintiff's allegations, in part, concerned defendant's alleged failure to provide sufficient parts of a sufficient quality as required under the various agreements. Defendant asserted various counterclaims related to plaintiff's alleged nonpayment and breach of its contractual obligations.

After over a year of discovery and various proceedings, the parties reached a settlement following facilitation. The parties memorialized the terms of the settlement in a term sheet, initialed by the parties and the facilitator, that contained both typewritten and handwritten entries. The parties placed the settlement on the record before the trial court in November 2014, agreeing that the term sheet reflected the terms of their settlement and that it "resolves any and all claims between [plaintiff] and [defendant] arising out of this contractual relationship." The term sheet provided that settlement documentation was to be completed and executed by a date certain, and that the litigation would be dismissed with prejudice and without costs to either party.

Following the facilitation, the initialing of the term sheet, and the placement of the settlement on the record, the parties were unable to agree on language for the settlement documentation called for in the term sheet. The parties disagreed whether the term sheet provided for the release of the Indemnification Claims.

In March 2015, the parties filed cross motions to enforce the settlement, with defendant seeking an order declaring that plaintiff had released defendant from all claims, including the Indemnification Claims, while plaintiff sought an order declaring that defendant was *not* released from the Indemnification Claims. At the hearing on the opposing motions, the trial court stated that it would be applying an objective test relative to the interpretation of the term sheet and its release language, and stated:

> I can tell you right now, gentlemen, without ruling that my focus is more on process than parts because even if there were problems with parts, those were covered by scrap debits. The counterclaim – the original claim was, hey, I wanted to produce these, Benteler versus Wellington, and don't stop them from producing them because the whole Ford Explorer line with come to a screeching halt. The counterclaim was, well, look, these dies, they weren't PPAP'd and we're losing money, a significant amount of money, and we'll lose a significant amount over the course, whether it's FLCA or non-FLCA parts.

> Ultimately that will be my focus on this. And I will be excluding whatever I consider to be parole evidence inconsistent. And I will be applying the Lucy versus Zimmer test which has been adopted in Michigan to looking to what objectively, based upon the litigation, this is all about. Again, my focus is more is on process than on parts because that's what we discussed at nauseam. Two weeks and I'll give you my ultimate decision after I sift through everything that's been filed.

At a hearing held two weeks later, the trial court announced its decision denying defendant's motion to enforce the settlement agreement relative to the scope of the release, holding that the language of the term sheet was clear and unambiguous and that defendant "remains liable for the defect of [sic] parts that it may have manufactured" under the relevant agreement. The trial court subsequently denied defendant's motion for reconsideration.

After the trial court's decision on the release issue, the parties filed further cross-motions to enforce the settlement, this time concerning the "scrap debits" that represented plaintiff's share of the revenue generated from the sale of scrap metal created as a byproduct of defendant's production of parts for plaintiff.[2] The issue of scrap debits was the subject of paragraphs 4 and 6 of the term sheet. The parties disagreed whether plaintiff could take any future scrap debits after the deduction (from the settlement amount) of an initial dollar amount specified in the term sheet. The trial court ultimately held that the term sheet provided that plaintiff could not take any future scrap debits after the initial deduction. The trial court issued an order to that effect on June 15, 2015.

The final stipulated order of dismissal was entered on June 29, 2015. This appeal and cross-appeal followed.

## II. MAIN APPEAL

In the main appeal, defendant argues that the language of the term sheet unambiguously releases it from liability for all future claims by plaintiff, including the Indemnification Claims. We agree. A settlement agreement is interpreted according to the principles governing the interpretation of contracts. *Walbridge Aldinger Co v Walcon Corp*, 207 Mich App 566, 571; 525 NW2d 489 (1994). Accordingly, we review de novo as a question of law the trial court's interpretation of the language of the term sheet. *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 366-367; 817 NW2d 504 (2012). We also review de novo the trial court's determination that the language of the term sheet was not ambiguous. See *Farm Bureau Mut Ins Co v Nikkel*, 460 Mich 558, 563; 596 NW2d 915 (1999).

A court's primary goal in interpreting a contract is to honor the intent of the parties. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 473; 663 NW2d 447 (2003). Contractual language is to be given its ordinary and plain meaning. *Singer v American States Ins*, 245 Mich App 370, 374; 631 NW2d 34 (2001). A court should construe a contract so as to give effect to every word, clause, and phrase, and avoid rendering any part of the contract surplusage or nugatory. *Klapp*, 468 Mich at 467. Further, an unambiguous contract must be enforced as written. *Farmers Ins Exch v Kurzmann*, 257 Mich App 412, 418; 668 NW2d 199 (2003). A contract is unambiguous if it "fairly admits of but one interpretation." *Nikkel*, 460 Mich at 566 (citation omitted).

---

[2] In the ordinary course of business, plaintiff would deduct its share of scrap metal revenues as a "debit" from the amount it owed to defendant for parts.

As stated earlier, the term sheet reflects both typewritten language and handwritten entries. Paragraph 8, as reflected in the following excerpt, governs releases:

8. New Settlement Agreement will include (a) except for obligations arising under the New Settlement Agreement, broad form mutual releases and discharges of all actual and potential, known and unknown, liabilities, demands, causes of action, damages, costs, expenses, fees, debts, debits, setoffs, invoices, sums of money, accounts, agreements, contracts (including without limitation the parties' Long Term Agreement dated January 25, 2013, Settlement Agreement and Release dated January 25, 2013, Project Agreement dated January 25, 2013, and any other business or order between the parties and their affiliates), scheduling agreements, duties, obligations, and claims of every nature arising from or related to all transactions and dealings between the parties, (b) confidentiality provisions, (c) customary settlement provisions and such settlement provisions as to which the parties mutually agree. The New Settlement Agreement and this term sheet supersedes the prior Settlement Agreement, Long Term Agreement, and Project Agreement dated January 25, 2013 as well as all existing scheduling agreements and all other agreements.

9. Jerome Rock to assist the parties, as requested, relative to any disputes in the development of the settlement terms and conditions into the New Settlement Agreement. Mr. Rock's fees to be paid by the parties 50/50.

As this excerpt of the term sheet reflects, the underlining in paragraph 8 is handwritten. Additionally, along the left side of the paragraph are the handwritten words "Tom/George.", "To fix wording.", and "Martin/John adjudicate."[3] The notations "Tom/George." and "Martin/John adjudicate." appear adjacent to the underlined language in the second sentence of paragraph 8, and "To fix wording." extends upward from the "Tom/George." notation.

In interpreting this provision, the trial court stated that its decision was also informed by paragraph 12 of the term sheet, which provides:

12. All product liability and automotive recall insurance purchased by Benteler for Wellington shall remain in place and shall not be affected by the terms of this agreement.

Again, as this excerpt reflects, the "12" is circled in pencil or pen. In addition (and while not reflected in the excerpt)[4] a handwritten question mark appears next to it.[5]

---

[3] Plaintiff represents that "Tom/George" refers to legal counsel for the respective parties, and that "Martin/John" refers to high-level executives of the parties.

[4] The term sheet was filed under seal in this Court. The excerpts of the term sheet, as reflected in this opinion, are taken not from the sealed exhibit, but rather from publicly-filed briefs.

The trial court found that the term sheet was unambiguous, but concluded that defendant "remains liable for the defect of [sic] parts that it may have manufactured under this agreement." We agree that the term sheet is unambiguous in all relevant respects,[6] but disagree that it does not release defendant from liability for the Indemnification Claims.

Paragraph 8 of the term sheet provides for releases of "*all* actual and potential, known and unknown, liabilities, demands, causes of action, damages, costs, expenses, fees, debts, debits, setoffs, invoices, sums of money, accounts, agreements, contracts . . . scheduling agreements, duties, obligations, and claims of every nature arising from or related to all transactions and dealings between the parties." (Emphasis added; underlining omitted). "[T]here cannot be any broader classification than the word 'all'. In its ordinary and natural meaning, the word 'all' leaves no room for exceptions." *Heritage Resources, Inc v Caterpillar Fin Serv Corp*, 284 Mich App 617, 642; 774 NW2d 332 (2009) (citation omitted). In *Heritage Resources*, this Court found that language releasing a party from "any and all actual and potential claims" was "very broad," and "sweeping." So too here, plaintiff granted a sweeping release of "all actual and potential, known and unknown . . . claims of every nature arising from or related to all transactions and dealings between the parties." We conclude that this language of the first sentence of paragraph 8 is sufficiently broad to discharge the Indemnification Claims. Further, that sentence specifically discharges claims arising from the Long Term Agreement of 2013 (LTA), which contained express warranties from defendant on the parts supplied to plaintiff as well as promises of indemnification. While plaintiff argues that the handwritten notations and the underlining within and adjoining the second sentence of paragraph 8 indicate that the parties did not intend for the term sheet to supersede the LTA, we conclude that the handwritten underlining of some words in the *second* sentence, along with the described notations, is insufficient to support the interpretation of the trial court (or to create an ambiguity), as such an interpretation would render much of the first (and unmarked by handwritten alterations) sentence surplusage or nugatory. *Klapp*, 468 Mich at 467.

Further, we do not find that paragraph 12 undermines our interpretation of the unambiguous language of paragraph 8. The retention of product liability and automotive recall insurance (in paragraph 12) is not inconsistent with a broad release (in paragraph 8) that encompasses the Indemnification Claims; after all, defendant could be sued directly by a third party for claims related to the parts it provided to plaintiff. Without regard to the release of claims by plaintiff, the insurance could protect defendant in the event of such third party claims, and could additionally provide for the payment of defense or other costs in that event. Finally, even if the retention of insurance was unnecessary, this sort of "belts and suspenders" approach to protecting defendant's interest is certainly understandable in dissolving a complex contractual

---

[5] Paragraph 13 of the term sheet (relating to a different issue) reflects a similar circle and question mark but, unlike paragraph 12, also reflects a squiggly line indicating the excision of the typewritten language from the term sheet.

[6] Neither party disagrees with the trial court's (or our) conclusion that the term sheet is unambiguous. To the contrary, both parties assert that the term sheet indeed is unambiguous, although they disagree regarding its meaning.

relationship with a high dollar value. Surplusage alone does not render a contract ambiguous. *Mich Twp Participating Plan v Pavolich*, 232 Mich App 378, 388; 591 NW2d 325 (1998).

For these reasons, we conclude that the trial court erred by holding that the term sheet did not provide for the release of *all* present and future claims between the parties related to the contractual relationship at issue, including the Indemnification Claims. In the main appeal, we remand for entry of an order consistent with this holding.

## III. CROSS-APPEAL

In its cross-appeal, plaintiff argues that the trial court erred when it concluded that the term sheet provided that plaintiff could not take any scrap debits, beyond the initial dollar amount specified in the term sheet. We disagree.

Plaintiff argues that the following notations on the term sheet together indicate the parties' intent that plaintiff would be able to take scrap debits in the normal course of business: (1) the handwritten underlining of the words "debits" and "setoffs" in paragraph 8, (2) the underlining and circling of the phrase "with no additional offsets, debits, or deductions" in paragraph 4 with an arrow drawn to the handwritten phrase "Just against the [initial settlement amount]", and (3) the underlining of the following language in paragraph 6, "Except for said steel cost, Wellington will not be subject to any additional offsets, debits or deductions (including scrap debits)." Those notations are set forth in the term sheet as reflected in the above-excerpted paragraph 8 and in the following additional excerpts of paragraphs 4 and 6:

4. Benteler pays consideration to Wellington as follows:

   $ ███ USD,

   From which Benteler will deduct a total of $791,000 for scrap through the end of supply, resulting in a cash payment to Wellington of ███ with no additional offsets, debits or deductions, and    *Just against the* ███

   Upon execution of a formal Settlement Agreement, the parties shall submit a stipulation and proposed order for the immediate and unconditional release to Wellington of the entire Escrow account with Kalamazoo Circuit Court or the Wayne County Circuit court (current estimated amount, including accrued interest, $360,000).

   *Modify*

* * *

6. Until completion of the transfer of all Dies, Wellington will continue non-FLCA production in the ordinary course for parts following the date hereof through the end of supply and Benteler shall pay Wellington's outstanding accounts receivable for finished goods (priced at 2013 levels), work in process and raw materials in the normal course of

-6-

business, provided, however that Wellington shall not release the last Die until all of its outstanding accounts receivable are paid. Wellington shall pay for steel in the ordinary course of business. Except for said steel cost, Wellington will not be subject to any additional offsets, debits or deductions (including scrap debits).

We do not find plaintiff's argument concerning these notations convincing. In short, none of the handwritten notations referenced by plaintiff undermine the unambiguous meaning of the language in paragraph 6, "Except for said steel cost, Wellington will not be subject to any additional offsets, debits or deductions (including scrap debits)." The underlining or circling of language in no way equates to excising it from the document. And although plaintiff argues that the addition of handwritten language and notations to paragraph 4 indicates the parties' intent to allow future scrap debits, the most that can be inferred from those entries is that the "offsets, debits or deductions" are limited to the specified initial deduction. It is at best a strained construction to say that this language alters the clear language of paragraph 6. See *Singer*, 245 Mich App 374. The term sheet is replete with examples of the parties crossing out language they found problematic and substituting other handwritten language; this did not occur with regard to paragraph 6. Additionally, because the language of paragraph 6 is unambiguous, the trial court properly gave no weight to plaintiff's argument that subsequent, unsuccessful negotiations of the terms of the settlement documentation indicated an intent by the parties to allow plaintiff to take scrap debits. See *Klapp*, 468 Mich at 470.

Reversed with regard to defendant's appeal, and remanded for entry of an order consistent with this opinion. Affirmed with regard to plaintiff's cross appeal. As the prevailing party, defendant may tax costs. MCR 7.219(A). We do not retain jurisdiction.

/s/ Michael J. Talbot
/s/ Christopher M. Murray
/s/ Mark T. Boonstra