# STATE OF MICHIGAN

# COURT OF APPEALS

MICHIGAN TOWNSHIP PARTICIPATING[1] PLAN,

Plaintiff-Appellant,

v

CHARTER TOWNSHIP OF HARRISON, VIJAY PARAKH, FJN LLC, FRANK'S HOLDINGS LLC, doing business as GINO'S SURF, FRANK NAZAR, SR., and FRANK NAZAR, JR.,

Defendants-Appellees.

UNPUBLISHED
April 13, 2017

No.   331109
Macomb Circuit Court
LC No.   2015-001046-CK

Before:  O'CONNELL, P.J., and GLEICHER and BOONSTRA, JJ.

PER CURIAM.

Plaintiff insurer appeals by right the trial court's order granting summary disposition in favor of defendants Charter Township of Harrison (the "Township") and Vijay Parakh ("Parakh") pursuant to MCR 2.116(C)(10).[2]  We affirm.

## I.  FACTUAL BACKGROUND

Plaintiff sought a declaratory judgment regarding the applicable liability limit under a liability insurance policy (the "Policy") that it had issued to the Township.  Plaintiff's claim

---

[1] Although the majority of the documents in the lower court record refer to plaintiff as Michigan Township Participation Plan, the record also reflects, and this Court was informed at oral argument, that the plaintiff's correct name is as captioned.  This is confirmed by this Court's references to plaintiff in other cases before it.  See, e.g., *Michigan Twp Participating Plan v Federal Ins Co*, 233 Mich App 422; 592 NW2d 760 (1999).

[2] The trial court also granted summary disposition in favor of defendants Frank's Holdings LLC, d/b/a Gino's Surf, Frank Nazar, Sr., and Frank Nazar, Jr. (collectively the "Nazar defendants" or the "Nazars") pursuant to MCR 2.116(C)(8).  Plaintiff has not appealed that aspect of the trial court's order.

-1-

relates to an underlying federal court action in which a jury found that the Township and Parakh had violated the substantive due process rights of the Nazar defendants, who were the plaintiffs in that case.[3] The trial court in this case rejected plaintiff's argument that the wrongful conduct adjudged (in the federal court case) to have occurred fit within the Policy's definition of a "Regulatory Taking of Private Property." Under the Policy, the liability limit for a "Regulatory Taking of Private Property" is $1 million, whereas the liability limit otherwise is $5 million.

## A. THE UNDERLYING FEDERAL CASE

The Nazar defendants owned a 16,848 square foot restaurant and banquet hall located in Harrison Township called Gino's Surf. The original facility had been in operation for at least 50 years. The Nazars submitted a plan to the Township for two additions to the facility, which would be constructed in two phases. Phase I was the construction of a patio and "tiki bar," for which they received a certificate of occupancy in January 2008. Phase II was the construction of a 5,540 square foot area to include an antique car museum and a restaurant, which was to be connected to the north side of the existing banquet hall so that it could be served by the existing kitchen. The Phase II addition was on the same parcel of land as the original Gino's Surf's structure and had an adjoining wall. The Township approved the plan for Phase I in May 2007 and issued a building permit in March 2008.

The Nazars applied for a certificate of occupancy for Phase II from Parakh, a building official for the Township, on February 4, 2009. Harrison Township Zoning Ordinance § 16.01 states that a building official "shall not refuse to issue a permit when the conditions imposed by this ordinance are complied with by the applicant." Another ordinance, Harrison Township Zoning Ordinance § 16.03(6), required Parakh to issue the certificate within five days if the project *was* in accordance with the zoning ordinances; if not, it required Parakh to notify the applicant within the same five-day period that the application was being denied and to provide the reason for the denial. Parakh neither issued the certificate of occupancy nor denied the Nazars' application as required. The Nazar's eventually filed suit in federal court in October 2009. In their federal court complaint, the Nazars alleged that, instead of fulfilling his statutory duties, Parakh harassed them repeatedly through such actions as shutting down their grand opening party, issuing false tickets and sending them to the wrong address, and demanding that the Nazars correct deficiencies that had nothing to do with the requirements for the certificate of occupancy for Phase II, which requirements had already been met. Parakh conducted an inspection pursuant to a court order on January 18, 2010—approximately 11 months after the Nazars first applied for the certificate of occupancy. A temporary certificate of occupancy was issued shortly thereafter. It is undisputed that both the original Gino's Surf facility and the tiki bar remained operational at all relevant times.

---

[3] See *FJN LLC v Parakh*, unpublished order of the United States District Court for the Eastern District of Michigan, Southern Division, entered December 12, 2014 (Docket No. 2:09-cv-14262).

The federal court ultimately dismissed the Nazars' state law claims and certain of their federal claims, allowing the Nazar's case to proceed to a jury trial on the issue of whether Parakh had violated their substantive due process rights by refusing to issue a certificate of occupancy despite the Nazars' compliance with Township ordinances, and the issue of whether the Township was also liable for that violation under 42 USC § 1983 based on Parakh's possession of final decision-making authority in issuing certificates of occupancy.[4] After finding that Parakh and the Township had violated the Nazars' substantive due process rights, the federal court jury awarded the Nazars $1,210,000, which included historical and future lost profits, out-of-pocket costs, and a $400,000 punitive damages award against Parakh. The federal district court upheld the verdict and all damages awarded except the $500,000 for historical lost profits, which it remitted to $493,755.[5] After the entry of the federal court judgment, plaintiff reached a settlement with the Nazars and paid the judgment.

## B. THE INSTANT CASE

Plaintiff then filed suit in the trial court, seeking a declaratory judgment regarding the applicable liability limit under the Policy. The Policy included coverage for three categories of "Wrongful act(s)," with varying liability limits: (1) a general category of wrongful acts, excluding "Violations of Civil Rights," which is subject to a liability limit of $5,000,000; (2) a second category of wrongful acts constituting "Violations of Civil Rights," which is also subject to the general liability limit of $5,000,000; and (3) a sub-category of "Violations of Civil Rights" that are also "Regulatory Takings of Private Property," which is subject to a liability limit of $1,000,000. Plaintiff sought a declaration that the applicable limitation of liability was the sublimit of $1,000,000 for a "Regulatory Taking of Private Property." Plaintiff also sought a judgment against the Township and Parakh for the amount it had paid over that $1,000,000 sublimit—an amount that would be equal to the settlement payment minus whatever amount of the $1,000,000 sublimit that would remain after the costs of defense were subtracted.[6]

All of the parties moved for summary disposition. The trial court granted the Nazar defendants' motion for summary disposition pursuant to MCR 2.116(C)(8), and dismissed them from the case, because those defendants were neither parties to, nor third-party beneficiaries of, the Policy. The Nazar defendants are not party to this appeal. The trial court denied plaintiff's

---

[4] *FJN LLC v Parakh*, unpublished order of the United States District Court for the Eastern District of Michigan, Southern Division, entered March 28, 2012 (Docket No. 2:09-cv-14262).

[5] The court also awarded attorney fees to the Nazars' counsel in the amount of $272,789.75 and denied the Nazars' attorneys' motion to recover over $40,000 in costs. The court, however, ordered that the Nazars' attorneys could file a bill of costs with the clerk of the court to recover costs in the amount of $6,099.08, which represented their costs minus a fee paid to an expert witness.

[6] Under the terms of the Policy, costs were to be paid over and above the liability limit if the $5,000,000 limit applied, but were *included* in coverage for wrongful acts to which the $1,000,000 limit applied.

-3-

motion for summary disposition and granted summary disposition in favor of the Township and Parakh pursuant to MCR 2.116(C)(10), holding that there were no genuine issues of material fact regarding the applicable limitation of liability, that the general liability limit of $5,000,000 applied, and the Township and Parakh were entitled to judgment as a matter of law. The trial court therefore rendered judgment in favor of the Township and Parakh, declaring that the $5,000,000 general liability coverage limit applied to the verdict against them in the underlying federal court case.

This appeal followed. After filing their claim of appeal, defendants filed a motion for partial reconsideration with the trial court, which the trial court denied for the reason that it lacked jurisdiction once an appeal had been filed pursuant to MCR 7.208(A). Defendants then moved this Court to remand for the trial court to consider a renewed motion for partial reconsideration, which this Court granted.[7] The trial court then considered, and granted, defendants' motion for partial reconsideration, holding that it had improperly ruled that the punitive damages assessed against Parakh were excluded from the coverage under the $5,000,000 policy limit when no party had raised or briefed that issue. The trial court therefore vacated the portion of its original opinion and order discussing that issue.

## II. STANDARD OF REVIEW

We review de novo decisions granting or denying motions for summary disposition. *Heath v State Farm Mut Auto Ins Co*, 255 Mich App 217, 218; 659 NW2d 698 (2002). MCR 2.116(C)(10) provides for summary disposition when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. We review de novo as a question of law the interpretation of insurance policy language. *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 47-48; 664 NW2d 776 (2003). We also review de novo a trial court's determination whether a regulatory taking has occurred. *Schmude Oil, Inc v Dep't of Environmental Quality*, 306 Mich App 35, 50; 856 NW2d 84 (2014).

## III. ANALYSIS

There are no material facts at issue in this case. Instead, the dispositive legal issue is the amount of coverage that the Policy provides for the acts that were found in federal court to have violated the Nazar defendants' substantive due process rights. Plaintiff argues that the trial court erred when it held that the $5,000,000 general liability limit applied in this case instead of the $1,000,000 sublimit, because the wrongful acts constituted a "Regulatory Taking of Private Property" as defined in the Policy. We disagree.

### A. INTERPRETATION OF INSURANCE CONTRACTS

Insurance policies, like other contracts, are agreements between parties, and a court's obligation is to determine and effectuate the parties' intent. *Heath*, 255 Mich App at 218. In so

---

[7] See *Michigan Township Participation* [sic] *Plan v Harrison Charter Twp*, unpublished order of the Court of Appeals, issued March 14, 2016 (Docket No. 331109).

doing, the contract must be read as a whole, and meaning must be given to all terms of the policy. *Id.* Terms that are defined within the policy must be given the meaning set forth in that definition, while undefined terms are generally interpreted according to their commonly used meaning. *Id.* Clear and unambiguous policy language must be enforced according to its plain meaning. *Auto-Owners Ins Co v Harvey*, 219 Mich App 466, 469; 556 NW2d 517 (1996). Policy language is clear and unambiguous if it fairly admits of only one interpretation. *Matakas v Citizens Mut Ins Co*, 202 Mich App 642, 650; 509 NW2d 898 (1993). Policy language is not rendered ambiguous by the mere fact that a relevant term is left undefined. *Heath*, 255 Mich App at 219.

Any ambiguity in an insurance policy is to be construed in favor of the insured. *Singer v Am States Ins*, 245 Mich App 370, 374-375; 631 NW2d 34 (2001). Exclusion provisions also are to be strictly construed in favor of the insured. *Auto-Owners Ins Co v Churchman*, 440 Mich 560, 567; 489 NW2d 431 (1992).

## B. THE POLICY LANGUAGE

The term "Wrongful act(s)" is defined in the Policy as:

1. [A]ny actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty by any insured, other than any actual or alleged "Violation of Civil rights;" [sic]

2. "Violation of Civil Rights" other than actual or alleged "Regulatory Taking of Private Property"; and

3. Subject to Paragraph IV, LIMITS OF LIABILITY as herein amended, "Regulatory Taking of Private Property"

The Policy defines "Violation of Civil Rights" as "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, including discrimination . . . ." The Policy defines "Regulatory Taking of Private Property" as "the enactment or enforcement of any regulation or ordinance which unconstitutionally and temporally restricts the use of private property."

The parties agree that, because the federal court trial established that the Township had violated the Nazars' right to substantive due process, the wrongful acts were a "Violation of Civil Rights" under the Policy. If the wrongful acts were not also a "Regulatory Taking of Private Property," then the general wrongful act policy limit of $5,000,000 would apply. When the $5,000,000 general limit applies, plaintiff is also obligated to make "Supplementary Payments," which include any costs taxed against the Township as well as post-judgment interest.[8] If, on the other hand, the Township's wrongful acts were a "Regulatory Taking of

---

[8] The Policy provides:

Private Property," then the sublimit of $1,000,000 would apply and would include Supplementary Payments only to the extent that they would not cause the payment to exceed the sublimit.[9]

## C. INTERPRETATION OF THE POLICY LANGUAGE

Plaintiff argues that the wrongful acts in question fit within the Policy's definition of "Regulatory Taking of Private Property" because the Township's enforcement of its zoning codes unconstitutionally (through denying the Nazars' substantive due process rights) and temporally (for 11 months)[10] restricted the Nazars' use of their private property. We disagree.

As noted, the Policy defines "Regulatory Taking of Private Property" to mean "the enactment or enforcement" of a regulation or ordinance that offends in the manner described. The terms "enactment" and "enforcement" are not defined within the Policy. This Court may therefore consult a dictionary for guidance in giving these terms their plain and ordinary meaning. *Holland v Trinity Health Care Corp*, 287 Mich App 524, 527-528; 791 NW2d 724 (2010). *Merriam-Webster's Collegiate Dictionary* (11th ed) defines "enact" as "to establish by legal and authoritative act." *Black's Law Dictionary* (10th ed) provides substantially the same definition. *Merriam-Webster's* also defines "enforce" with regard to laws as "to carry out effectively." *Merriam-Webster's Collegiate Dictionary* (11th ed). And *Black's* defines the term as "to give force or effect to" or "to compel obedience to" a law. *Black's Law Dictionary* (10th ed).

---

1. Supplementary Payments. The Company [plaintiff] will pay, in addition to the applicable limit of liability:

(a) all expenses incurred by the Company, all costs taxed against the insured in any suit defended by the Company and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the Company has tendered or deposited in court that part of the judgment which does not exceed the limit of the Company's liability thereon.

[9] This provision of the Policy provides:

Notwithstanding the amount set forth in the "Wrongful Act" limit, the most we will pay under Coverage II for the sum of all "loss" because of "Regulatory Taking of Private Property" sustained by any one person or organization is $1,000,000. Included in this amount is the supplementary payments defined in the conditions applicable to Section II, 1. Supplementary Payments.

[10] The Nazars experienced a delay in the opening of their completed restaurant because the Township failed either to issue a certificate of occupancy or to formally deny the request so to allow for an appeal.

Here, the action that delayed the Nazar defendants' ability to open the addition to their business was not the Township's legal and authoritative establishment of any unconstitutional laws or ordinances, or Parakh's actions in giving force to or compelling obedience to such laws or ordinances. Rather, it was Parakh's failure to perform his duties under the relevant ordinances that required him to issue a certificate of occupancy within five days of application, or to deny it and state the reasons. It was his failure to do either that deprived the Nazars of their right to appeal a negative decision, which the federal jury determined was a substantive due process violation. See *FJN LLC v Parakh*, unpublished order of the United States District Court for the Eastern District of Michigan, Southern Division, entered December 12, 2014 (Docket No. 2:09-cv-14262), 1.

Therefore, giving the Policy language its plain and ordinary meaning, *Heath*, 255 Mich App at 219, we conclude that the trial court did not err when it concluded that the definition of "Regulatory Taking of Private Property" in the Policy "says nothing about a loss caused by the failure to apply an ordinance consistently" and that Parakh's delay of the final inspection and addition of additional requirements for issuing a certificate of occupancy did not fall into the category of "Regulatory Taking of Private Property," as defined in the Policy. Although Plaintiff argues that Parakh's affirmative acts that formed the basis of the federal court judgment constituted enforcement of various building codes, we disagree; in the end, any restriction on the Nazars' use of their property was caused by Parakh's refusal to fulfill his obligation to either issue a certificate of occupancy or allow the matter to proceed to appeal, not by any enforcement of a building code. Accordingly, the trial court properly granted summary disposition in favor of the Township and Parakh on the ground that these defendants were entitled to judgment as a matter of law concerning the applicable policy limit. MCR 2.116(C)(10).

Affirmed.

/s/ Peter D. O'Connell
/s/ Elizabeth L. Gleicher
/s/ Mark T. Boonstra

-7-